Mahan, Appellant, *v.* Lower Merion Township.

Argued January 12, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Thomas J. Burke,* with him *Haws & Burke,* for appellants.

*John E. Forsythe,* Township Solicitor, with him *A. Gregg Jackson,* and *Wright, Spencer, Manning & Sagendorph,* for township, appellee.

OPINION BY MR. JUSTICE O'BRIEN, July 20, 1965:

Plaintiffs, property owners, appealed from an order dismissing their complaint in equity for lack of jurisdiction. Appellee, on November 20, 1963, enacted an ordinance condemning premises owned by the plaintiffs for use as an historic public park and recreation area and authorized the proper officers of the township to execute a bond to secure payment of damages to the owners.

The plaintiffs, on December 18, 1963, filed a complaint for injunctive relief to restrain the defendant-township from proceeding with the condemnation of their property. Appellants challenge the validity of the proposed condemnation. The court below dismissed the complaint, relying on *Balazick v. Dunkard-Bobtown Mun. Auth.*, 414 Pa. 182, 199 A. 2d 430 (1964); *Cunfer v. Carbon Airport Auth.*, 414 Pa. 408, 200 A. 2d 768 (1964); and *Pgh. Rwys. Co. v. Port of Alleg. Co. Auth.*, 415 Pa. 177, 202 A. 2d 816 (1964).

We held in *Balazick* that a court of equity has no jurisdiction to determine whether a municipal authority has the right of eminent domain, and we said: "In Schwab v. Pottstown Borough, 407 Pa. 531, 180 A. 2d 921, we held that a court of equity had no jurisdiction to determine whether there had been a taking of private property for public use or to assess and award damages for such taking. The decisional point in Schwab was that, under the statutory law of Pennsylvania, a complete and adequate procedure has been provided to guard and protect the constitutional rights of private owners in all condemnation proceedings. See also: Gardner v. Allegheny County, 382 Pa. 88, 114 A. 2d 491; Creasy v. Lawler, 389 Pa. 635, 133 A. 2d 178, affirming per curiam 8 Pa. D. & C. 2d 535; Martin v. Creasy, 360 U.S. 219, 3 L. Ed. 2d 1186, 79 S. Ct. 1034. . . . The basic challenge in the equity action is clearly to the right, power and authority of the Author-

ity to exercise any right of eminent domain under the circumstances and the resolution of that issue can and should be made *only* in eminent domain proceedings. As this Court said in Schwab, supra, p. 534: 'It is a commonplace that where the legislature has provided a remedy or procedure, that remedy or procedure is exclusive and alone must be pursued. Jacobs v. Fetzer, 381 Pa. 262, 112 A. 2d 356 (1955). See also Smith v. Zoning Board of Adjustment, 407 Pa. 122, 179 A. 2d 192 (1962) and Salisbury Township v. Sun Oil Co., 406 Pa. 604, 179 A. 2d 195 (1962).' " (Emphasis in original).

We affirmed the dismissal of the plaintiffs' complaint in equity on the ground of lack of jurisdiction.

In *Cunfer,* supra, we vacated the issuance of a temporary injunction order on the ground that a court of equity has no jurisdiction to determine whether a municipal authority has the right of eminent domain or whether it has properly exercised any right of eminent domain. The plaintiff there brought an action in equity to challenge the validity of the authority condemnation, citing therein *Balazick* and *Schwab*.

In *Pgh. Rwys. Co.,* supra, the lower court refused to issue a preliminary injunction to restrain the Port Authority from filing its petition for condemnation. We held that equity did not have jurisdiction to determine whether a municipal authority has the right of eminent domain or whether it has properly exercised any right of eminent domain. These cases stand for the proposition long recognized that equity jurisdiction is not available when there is an adequate remedy at law. We must, therefore, affirm the dismissal of the plaintiffs' complaint for lack of jurisdiction in equity.

The unusual feature of this case is that the eminent domain code[1] was enacted after the condemnation ordi-

---

[1] Act of 1964, June 22, P. L. 84, 26 P.S. §1-101 et seq.

nance was passed by the township, and all sections of the code are now in effect.

The ordinance was enacted on November 20, 1963, and on December 18, 1963, plaintiffs' complaint in equity was filed. From the time of the filing of the complaint, many motions were filed by the parties and the court heard arguments thereon. On September 24, 1964, the court en banc filed its opinion and order, from which order this appeal was taken. In the meantime, the eminent domain code became effective, upon the approval by the Governor on June 22, 1964, with the exception of provisions of Article IV, which became effective on September 1, 1964, and applied to all condemnations effected thereafter. Section 302, 26 P.S. §1-302, provides that: "This Act shall take effect immediately upon approval, and shall apply to all condemnations effected thereafter, except the provisions of Article IV, which shall not take effect until September 1, 1964, and shall apply to all condemnations effected thereafter. The provisions of Articles V and VII shall also apply to all steps taken subsequent to the effective date of this act in all condemnation proceedings in which the condemnation was effected prior to the effective date of this act."

Article IV, which became effective on September 1, 1964, provides for the procedure to condemn. Article V provides the procedure for determining damages, which article applies to all steps taken subsequent to the effective date of the Act and in all condemnation proceedings in which the condemnation was effected prior to the effective date of the Act. Article VII, covering evidence, is likewise effective as Article V.

The procedure to condemn in this case had reached the point of an enactment of an ordinance without bond having been offered or filed by the appellee-township. We believe the interests of justice require that this

condemnation should proceed under all of the provisions of the new eminent domain code in order that a determination be made in limine of the legality of the condemnation.[2] We make these comments in order that there will be an expeditious determination of this controversy.

Decree affirmed dismissing complaint for lack of jurisdiction in equity. Costs on appellants.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I entertain a different view of the powers of equity in cases of this character and accordingly dissent from the majority opinion. In order that my position may be made clear I repeat some of the salient facts in the case. In November, 1963, the Board of Commissioners of Lower Merion Township in Montgomery County enacted an ordinance providing for the condemnation, under eminent domain proceedings, of a tract of land owned by Francis A. Mahan and Alice Rolfe Read Mahan, his wife, for the purpose of creating a historic public park and recreation area. On December 18, 1963, the Mahans filed an action in equity in the court of common pleas for a writ of mandamus against the township, averring, inter alia, that the township was without authority, under the provisions of the First Class Township Code, to maintain historical properties, that the attempted taking constituted an abuse of the township's power of eminent domain since the land was not necessary for public use, and that the appropriation would result in "immediate and irreparable damage to the plaintiffs."

The township filed preliminary objections contesting equity jurisdiction in the matter, which the court sustained, dismissing the complaint for lack of juris-

---

[2] See comment to §406 by the Joint State Government Commission in its 1964 Report—Eminent Domain Code.

diction. In doing so, the court relied principally on three recent decisions of this Court, namely, *Balazick v. Dunkard-Bobtown Municipal Authority*, 414 Pa. 182; *Cunfer v. Carbon Airport Authority*, 414 Pa. 408; and *Pittsburgh Railways Co. v. Port of Allegheny County Authority*, 415 Pa. 177. Adopting the reasoning advanced by the township, the court held that whatever the law may have been prior to the indicated decisions, it was now clear that in *all* condemnation proceedings, the statutory proceedings with respect thereto, provide complete protection for property owners and that, therefore, equitable relief in that area is not available.

An analysis of the three cited cases reveals that in each of them the usual statutory remedy was indeed adequate to safeguard the property owners' rights. In none of those cases had the complaining party protested that irreparable harm was being threatened, as here. In *Balazick v. Dunkard-Bobtown Mun. Auth.*, 414 Pa. 182, 185, this Court said: "The basic challenge in the equity action is clearly to the right, power and authority of the Authority to exercise any right of eminent domain proceedings."

We made no pronouncement as to what our decision would be if irreparable harm had been pleaded. In fact the *Balazick* decision had been predicated on *Schwab v. Pottstown Borough*, 407 Pa. 531, wherein we said: "As we recently held in Perloff Bros., Inc. v. Cardonick, 406 Pa. 137, 176 A. 2d 413 (1962), a preliminary injunction will not issue unless: (1) the rights of the plaintiff are clear; (2) *there is an urgent necessity to avoid injury which cannot be compensated for by damages;* and (3) greater injury will be done by refusing it than in granting it. *None of the necessary elements are present here.* In essence, what appellant fears, and consequently seeks to enjoin, is that a taking of an easement instead of a fee simple interest will re-

sult in lessened compensation for his property by a jury of view. *He is enlisting equity's powers to aid him in obtaining the highest possible amount of condemnation damages.* (Emphasis supplied)

"Needless to say, equity is an improper forum for the relief sought by appellant."

Thus the inevitable conclusion to be drawn from *Schwab* is that where there is an urgent necessity to avoid injury "which cannot be compensated for by damages," the doors of equity are open. In that case the plaintiff was endeavoring to enlist "equity's powers to aid him in obtaining the highest possible amount of condemnation damages. Needless to say, equity is an improper forum for the relief sought by appellant." But, as we have seen, the plaintiffs here are not complaining about inadequacy of compensation. They are asserting that the contemplated condemnation proceedings rise as a catastrophic threat of irremediable harm for which there is no adequate remedy at law.

In *Cunfer v. Carbon Airport Authority,* supra, we said: "This equity action challenges the validity of the Authority's condemnation, particularly as to the bond which the Authority tendered to the Cunfer Estate. Our examination of this record clearly indicates that, *under the circumstances,* equity does not lie and that we need not consider the questions raised upon this appeal." (Emphasis supplied)

It will be noted that there we did not close and seal the portals to equity in all situations, we only said that "under the circumstances" there in existence, "equity does not lie." Two of the justices, fearing that the language of the decision *might be construed* as barring all equitable actions in cases of this character, stated in a concurring opinion: "However, the broad language of the opinion *seems to indicate* that in no instance does equity have jurisdiction where property is taken by eminent domain, a principle with which I cannot concur." (Emphasis supplied).

Later, in *Pittsburgh Railways Co. v. Port of Allegheny County Authority,* 415 Pa. 177, we again relied on our decision in *Schwab v. Pottstown Borough,* supra, because again we did not have before us any threat of irreparable harm and the eminent domain proceedings provided an adequate procedure to protect the plaintiff's alleged rights. That the Court did not in that case state that equity would not have jurisdiction under any circumstance is indicated by the fact that I joined in the majority opinion after having previously clearly expressed my views about the nonousting of equity by my joinder in the concurring opinion in the *Cunfer* case.

Aside from the fact that in none of the three cases cited by the lower court, and by the majority here, was alleged irreparable harm a factor, it must be apparent that we could not oust equity of its most vital historical role of providing a remedy where irreparable harm is threatened, and no remedy for that irredeemable loss is provided in law. In *Penn Anth. M. Co. v. Anth. M. of Pa.,* 318 Pa. 401, this Court stated that under §20 of Article V of the Constitution, which provides that the courts of common pleas shall exercise, subject to such changes as may be made by law, such chancery powers as are now vested by law in the courts of common pleas, or as may hereafter be conferred upon them by law, the term "chancery powers" comprehends " 'the jurisdiction, powers, practice and procedure in equity.' "

Even the Legislature's promulgation of the new Eminent Domain Code (Act of June 22, 1964)\* that the Code shall "provide a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of dam-

---

\* Not applicable in this case because the proceedings were begun in 1962.

ages therefor . . ." cannot be interpreted as dismissing equity from its jurisdiction to prevent irreparable harm. As we stated in *Pa. State Chamber of Commerce v. Torquato*, 386 Pa. 306, 329: " 'However, equity will afford relief if the statutory remedy is not adequate or its pursuit would work irreparable harm.... .'

"In Pennsylvania R. R. Co. v. Bogert, 209 Pa., supra, the court said (p. 601) : 'The most comprehensive statement of the rule and the one which has been followed by this court ever since its announcement in 1850 by Judge KING in Bank of Virginia v. Adams, 1 Parsons, 534, is as follows: "To induce equity to refuse its aid to a suitor, it is not sufficient that he may have some remedy at law. An existing remedy at law to induce equity to decline the exercise of its jurisdiction in favor of a suitor must be an adequate and complete one. And when from the nature and complications of a given case, its justice can best be reached, by means of the flexible machinery of a court of equity, in short, where a full, perfect and complete remedy cannot be afforded at law, equity extends its jurisdiction in furtherance of justice." ' "

To shear equity of its long recognized jurisdiction would require more explicit language than the mere statement that statutory proceedings shall be exclusive in the governing of condemnation proceedings and the calculation of damages. The statute is directed to the condemnation process itself and its various stages. There is nothing in it which suggests that it excludes or controls procedures which are separate therefrom, ancillary and preliminary thereto, or which form no part whatsoever of the condemnation process.

For instance, it could never be contended that if an appropriate authority, under the power of eminent domain, condemned Fort Pitt in Allegheny County or Governor Printz Park in Delaware County, equity

could not be appealed to, to enjoin the condemnation. Or to suggest quite an awesome, if overpowering illustration, if an authority, also operating under eminent domain, condemned Valley Forge or Independence Square, it would be unthinkable that the equitable sword of a chancellor could not be appealed to, to strike down the vandalistic threat to an ineffable and irreplaceable shrine of Liberty.

Principles of equity do not await application for magnitude of subject matter. Any one who can present a prima facie case of irreparable harm has the right to be heard in equity.

Equity, through historical development and innumerable court pronouncements, has been assigned the role of the specialist which is available to supply a remedy when all others fail or fall short of what is required to save a constitutional right from extinction. That role cannot be wiped out in any instance unless the legislature in language as clear as sunlight and as unequivocal as the multiplication table so declares. That language, as I view it, has not yet appeared.

I accordingly dissent.

Mr. Justice ROBERTS concurs in this dissenting opinion.