## Jefferson Township Condemnation

*Richard D. Hallahan* and *Simon K. Uhl*, for petitioners.

*Albert M. Nichols*, for respondents.

LANSBERRY, P. J., February 17, 1966.—On June 5, 1962, by appropriate resolution, the Pennsylvania Turnpike Commission condemned a total of 79.42 contiguous acres of land located in Jefferson Township, Somerset County, and in Cook and Donegal Townships, Westmoreland County, for the Laurel Hill Tunnel bypass, the owners of the property being D. Hall Blair, Elizabeth Blair Hirsh, David Blair, Jr., John P. Blair and Katherine P. Blair. On petition of the Turnpike Commission to the Common Pleas Court of Somerset County, three viewers from the Somerset County Board of Viewers were appointed on October 2, 1965, to view and assess the damages. Five days later, the Common Pleas Court of Westmoreland County, on petition of the landowners, appointed three viewers from the adjoining County of Allegheny to view and assess the same damages. On November 5, 1965, the Turnpike Commission petitioned the Westmoreland County Court to vacate its order appointing viewers, for the reason that viewers had already been appointed by the Somerset County Court of Common Pleas. On this petition, a rule to show cause was awarded. Thereafter, on December 1, 1965, the landowners presented their petition to the Somerset County Court asking that court to vacate its prior order appointing viewers. There being objection to granting a rule by the Turnpike Commission, this latter petition was set down for preliminary hearing on the issue of granting a rule, which issue is presently before this court. As of this time, the rule awarded in Westmoreland County remains undetermined.

The foregoing chronological events may be summarized as follows: June 5, 1962, resolution of condemnation; October 2, 1965, petition by Turnpike Commission to Somerset County Court for viewers and the order appointing viewers from Somerset County; October 7, 1965, petition by landowners to Westmore-

land County Court for viewers and the order appointing viewers from Allegheny County; November 4, 1965, petition of Turnpike Commission to Westmoreland County Court to vacate appointment of viewers and rule awarded; December 1, 1965, petition by landowners to Somerset County Court to vacate appointment of viewers.

There are three basic questions for determination by this court, of which the first is: In an eminent domain proceeding where the land condemned is located in two or more counties, may the condemnor present the petition for viewers in either of those counties? Both the Pennsylvania Turnpike Act of May 21, 1937, P. L. 774, 36 PS §652f, and the Eminent Domain Code of June 22, 1964, Special Session, P. L. 84, 26 PS §1-401, provide in section 6 of the former and section 401 of the latter, that where the condemned land is located in two or more counties, application for damages may be made in either of the counties. It will be noted that the provision contained in the turnpike act requiring that the three freeholders appointed as viewers shall be residents of a county adjoining that in which the land is located is not contained in the new Eminent Domain Code. It is clear that the court of either county in which the land is located may entertain a petition for viewers and make the appointment of the viewers.

The second question presented is whether the Eminent Domain Code of 1964 applies to a condemnation when that condemnation was effected prior to the effective date of the code.

It will be noted that the resolution of condemnation of the land here involved was dated June 5, 1962, which date constitutes the effective date of condemnation by the Pennsylvania Turnpike Commission. It will be noted further that the Eminent Domain Code was approved by the Governor June 22, 1964. No procedural steps as provided by the code were taken by either

party to agree upon the amount of damages; nor were any court proceedings instituted by either party to assess the damages until more than three years after the condemnation and more than one year after the effective date of the Eminent Domain Code.

The Eminent Domain Code, sec. 302, 26 PS §1-302, specifically provides for the effective date of the several provisions of the code as follows:

"This act shall take effect immediately upon approval, and shall apply to all condemnations effected thereafter, except the provisions of Article IV, which shall not take effect until September 1, 1964, and shall apply to all condemnations effected thereafter. The provisions of Articles V and VII shall also apply to all steps taken subsequent to the effective date of this act in all condemnation proceedings in which the condemnation was effected prior to the effective date of this act. . . ."

Except as specified in the act itself, the code became effective June 22, 1964, the date of its approval. Article V of the code, which provides the procedure for determining damages including, inter alia, petition for appointment of viewers, the view, notices and appeals, became effective on the date of approval and is applicable in all procedural steps taken after June 22, 1964, to determine damages "in all condemnation proceedings in which the condemnation was effected prior to" June 22, 1964. It is abundantly clear, therefore, that even though this condemnation became effective by the resolution of June 5, 1962, which condemnation occurred slightly more than two years before the code became generally effective, the procedures for determining these damages are governed by the Eminent Domain Code as specified in article V of the code, which specific section applies to all condemnations even though the condemnations were effected prior to the date of the code.

In an equity action, Mahan v. Lower Merion Township, 418 Pa. 558 at p. 561 (July 20, 1965), Mr. Justice O'Brien succinctly stated, inter alia:

"Article V provides the procedure for determining damages, which article applies to all steps taken subsequent to the effective date of the Act and in all condemnation proceedings in which the condemnation was effected prior to the effective date of the Act".

Accordingly, in answer to the second question presented, it is apparent that the procedures for determining the damages, which is the matter currently before this court, are governed by the Eminent Domain Code of 1964.

Section 504 of the Eminent Domain Code, 26 PS §1-504, provides for the appointment of the viewers, and article VIII provides for the establishment of a board of viewers in each county to be appointed by the court of common pleas, each member of the board of viewers being a resident of the county, unless necessity, as set forth in the code, requires otherwise. The provision in the Pennsylvania Turnpike Act requiring the viewers to be appointed from a county other than that in which the application is made (36 PS §652f), is not contained in the Eminent Domain Code of 1964, and the code contains no provision similar to that of the turnpike act.

The third question presented is whether the Eminent Domain Code of 1964 repeals the pertinent sections of the Turnpike Act of 1937. We are satisfied that it does by implication as to the issue here presented. Admittedly, the Eminent Domain Code does not expressly repeal the specifically pertinent sections of the Turnpike Act of 1937. Although section 903 of the Eminent Domain Code provides, "All other acts and parts of acts inconsistent with the provision of this act are hereby repealed", this provision is not conclusive on the point.

The canon of construction applied in numerous cases and contained in the Pennsylvania Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 63, 46 PS §563, is here applicable: "Whenever a general provision in a law shall be in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the Legislature that such general provision shall prevail". Here, the condemnation code was enacted after the turnpike act. Here, the legislature expressly stated in section 303 of the code its legislative intent: "It is intended by this act to provide a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages therefor, except as provided in section 901: . . . ."

Section 901 expressly designates those statutes and portions of statutes and codes which are not repealed by this Eminent Domain Code, which section, significantly, does not include the act establishing the Pennsylvania Turnpike Commission or any parts thereof, particularly the sections providing for the determination of damages. It appears, therefore, that the Eminent Domain Code impliedly repealed the pertinent sections of the Pennsylvania Turnpike Act having to do with the appointment of viewers.

For the foregoing reasons, we must decline the petition to vacate the order appointing viewers, which we now do in the following

ORDER

Now, February 17, 1966, the petition of D. Hall Blair et al., requesting this court to award a rule to

show cause and thereafter vacate the order of the court, dated October 2, 1965, appointing three disinterested freeholders, members of the board of viewers, to view and assess damages of the instant landowners, is declined.

Same day, counsel for condemnees objects to the foregoing ruling, and at his request an exception is noted and bill sealed.