## Commonwealth v. Kahn

530

*Robert R. Black,* for Commonwealth.
*Donald M. Bowman,* for condemnees.

WEIDNER, J., January 9, 1969.—On June 7, 1967, condemnor, Commonwealth of Pennsylvania, acting through the Pennsylvania Fish Commission, filed its declaration of taking in the Court of Common Pleas of Cumberland County, Pa., September term, 1967, no. 407, condemning 3.670 acres, more or less, of land of Kenneth Kahn and Irene Johnson Kahn, condemnees.

On June 30, 1967, preliminary objections to the declaration of taking were filed on behalf of the said condemnees in the nature of a motion for a more specific declaration and in the nature of a motion to dismiss and/or a demurrer. Depositions were taken and filed under order of court.

The preliminary objections were argued and are now before the court for disposition.

Condemnees' preliminary objections in the nature of a motion for more specific declaration claim that the declaration of taking fails to set forth in sufficient detail the purpose of the proposed condemnation and fails to set forth the proposed use of the land to be condemned.

There is no requirement in the law that the declaration of taking set forth the proposed use of the land to

be condemned. However, the declaration of taking must include "a brief description of the purpose of the condemnation and the need therefor". The declaration of taking in the instant case meets this requirement by providing:

"4. That the purpose of the condemnation and this Declaration of Taking is in furtherance of the authorized function of the Pennsylvania Fish Commission to provide land for recreation and conservation purposes, including the conservation and propagation of fish and other acquatic life, as well as for access sites on lakes and waterways for fishing and boating purposes".

This statement of purpose is actually detailed sufficiently to show that the condemnation comports with constitutional and statutory authority and is within the definitions set out for the words "recreation" and "conservation" in the statutory authority, Project 70 Land Acquisition and Borrowing Act of June 22, 1964, P. L. 131, sec. 17, 72 PS §3946.17 (c).

The preliminary objections in the form of a motion for more specific declaration must be dismissed.

The preliminary objection in the form of a motion to dismiss and/or a demurrer is based on the assertion of the condemnees that the Commonwealth of Pennsylvania, acting through the Pennsylvania Fish Commission, has no power or authority to condemn this particular land under Project 70 Land Acquisition and Borrowing Act, supra. The thrust of this argument is that, although the Commonwealth of Pennsylvania, acting through the Pennsylvania Fish Commission, does have the power of eminent domain under the Project 70 Land Acquisition and Borrowing Act, §17 (c) and The Fish Law of December 15, 1959, P. L. 1779, sec. 292, 30 PS §292, yet the Commonwealth, acting through the Fish Commission does not have the power to condemn this particular tract of land be-

cause the condemnation is in conflict with the findings and declarations of policy set out in section 2 of the Project 70 Land Acquisition and Borrowing Act, supra.

The Commonwealth of Pennsylvania, acting through the Pennsylvania Fish Commission, is given the power of eminent domain under both the Project 70 Land Acquisition and Borrowing Act and the Fish Law since the Project 70 Land Acquisition and Borrowing Act provides in section 17(c) that lands acquired by the Commonwealth through the Pennsylvania Fish Commission shall be acquired by eminent domain proceedings in the manner provided by applicable provisions of law which may govern land acquisitions by the Pennsylvania Fish Commission. The Eminent Domain Code of 1964 neither enlarges nor diminishes the power of condemnation given by law to the condemnor herein. Both acts, the Project 70 Land Acquisition and Borrowing Act and The Fish Law of December 15, 1959, find their base in the provisions of the Constitution of Pennsylvania, art. 1, sec. 10, which requires that private property be taken only for public use. This requirement sets no order of activity in the condemnation of property so long as the purpose of the condemnation satisfies the constitutional and statutory requirements. In Faranda Appeal, 420 Pa. 295 (1966), Faranda challenged the power and right of the Redevelopment Authority of the City of Lancaster to condemn his land because he contended the land was not in a blighted area as required. It was there held that Faranda had the right to challenge the power and right of the authority to condemn by means of preliminary objections. Similarly here, the condemnees are challenging the power and right of the Commonwealth acting through the Pennsylvania Fish Commission to condemn their land

for conservation or recreation purposes because they contend the land is not suitable for such.

In this we are not concerned with the findings and declarations of policy as asserted by condemnees but with the "standards for acquisition" set out in section 18(b) of the Project 70 Land Acquisition and Borrowing Act, which provides as follows:

"18(b) Lands to be acquired by the Pennsylvania Fish Commission or by the Pennsylvania Game Commission shall be such that they may be utilized for game, fish or other wildlife conservation and recreation purposes, and to the extent consistent with this primary purpose, priority in the lands to be so acquired shall be given to land which is suitable for multiple recreation utilization".

With no difficulty at all, we find that the land here involved is such that may be utilized for game, fish, or other wildlife conservation or recreation purposes, and further is suitable for multiple recreation utilization. It would be difficult to find any rural area with a stream flowing through it that would not be suitable for multiple recreation purposes. Apparently condemnee, Kenneth Kahn, agrees according to his testimony in the depositions as follows:

"Q. Has your property ever been used for recreational purposes by others?

A. Continuously, to the best of my knowledge.

Q. In what way?

A. It is open to hunters all except the area immediately surrounding the buildings, in the safety zone, for small animals and water fowl, and the area along the stream for fishing and picnicking.

Q. Have you ever deprived people from using the property for those purposes?

A. I have encouraged them. I have invited people to hunt, to hold picnics or fish. I don't meet a great number of people. When I first came here I inquired

of the safety zone program. When I began building fences, I made inquiry as to fish warden and game warden, Dorsey Smith, from Shippensburg. He told me how to build stiles so fishermen could get over the fences. When I built fences along the stream I moved it back to provide parking on the stream section of the road so that fishermen that would come for true sport fishing that they would have ample parking. . . ."

Also, condemnee, Irene Johnson Kahn, testified as to the use of the land for public recreation as follows:

"Q. You and your husband have allowed public recreation on the grounds?

A. Yes."

Nor do we find that the condemnation here involved is violative of the findings and declarations of policy set out in the Project 70 Land Acquisition and Borrowing Act, section 2 as asserted by the condemnees. The courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details or the manner adopted to carry them into execution: Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566 (1954); Faranda Appeal, supra; and In Re: Condemnation by Department of Highways in East Pennsboro Township in Camp Hill, 17 Cumb. 192. However, a review of the findings and declarations of policy as applicable to this particular tract reveals that the findings and declarations of policy are not violated in this taking. Condemnees assert that there is no imminent danger that the lands to be condemned will be lost forever to urban development or will become prohibitively expensive. However, by their own testimony they have indicated that the value of this land will increase immensely in a few years after it is developed for cattle breeding purposes.

Condemnees' assertion that public ownership of land for recreational purposes in Cumberland County is not less than 10 percent of the total land area, is contrary to the depositions and to the Project 70 Land Acquisition and Borrowing Act, sec. 3, subsec. 5, wherein it is provided in "definitions" that "acquisition county" means any county of the Commonwealth in which, at the time of the effective date of this act, public ownership of land for outdoor recreational purposes is less than 10 percent of the total land area and further provides that Cumberland County is represented in this definition.

Condemnees' next assertion, that the land to be condemned is not in close proximity to an urban area of more than 25,000 persons is not determinative of the issues because Cumberland County qualifies as an acquisition county on the alternative and by statute in the provision that Cumberland County is an acquisition county as set out above.

Condemnees' next assertion, that the acquisition of the land to be condemned will cause more than a minimum of hardship to the economy of the Commonwealth of Pennsylvania is untenable as it is hardly likely that the economy of the Commonwealth of Pennsylvania will be dented by this taking of 3.670 acres of land.

The condemnees' contention that the land to be condemned is remote and is not, and has not been, an area where recreational facilities are desired or needed is contradicted by the condemnees' own testimony as set out above.

Condemnees' next assertion that the Pennsylvania Fish Commission has planned no concrete or clearly defined use and has no specific plans whatsoever for the land to be condemned is likewise not determinative as there is no such requirement in the law. It was held in the Faranda case, supra, that there is no require-

ment that a redevelopment authority select a redeveloper or enter into a redevelopment contract before exercising the power of eminent domain conferred upon it. Likewise, in this situation, there is no requirement that the Pennsylvania Fish Commission have any specific plans for the use of the land at the time of taking.

Condemnees' preliminary objections in the form of a motion to dismiss and/or a demurrer must be dismissed.

### ORDER OF COURT

And now, January 9, 1969, 10 a.m., EST, the condemnees' preliminary objections to the declaration of taking of the condemnor are overruled and dismissed.