## Elsesser Condemnation

*Larry F. Knepp*, for Authority.
*Harry B. Thatcher* and *Thomas J. Dempsey*, for condemnee.

ZIEGLER, *P.J.*, February 16, 1979—This condemnation proceeding is before the court on preliminary objections of condemnee Elsesser (hereinafter condemnee), to a declaration of taking filed September 26, 1975, by the Redevelopment Authority of the County of Mifflin (hereinafter Authority).

The instant condemnation was part of the projected redevelopment of a portion of the Borough of Lewistown damaged by flood waters from tropical storm Agnes during June of 1972. The redevelopment project was commenced pursuant to and under authority of the Urban Redevelopment Law of May 24, 1945, P.L. 991, 35 P.S. §1701 et seq.

Condemnee's principal contention put forth in its preliminary objections charges that the proposed redevelopment area (in which condemnee's premises were located) was never properly determined to be a blighted area as required by the Urban Redevelopment Law. The characteristics of an area which has become blighted are set forth in said law as follows: "[T]he unsafe, unsanitary, inadequate or over-crowded condition of the dwellings therein, or . . . inadequate planning of the area, or excessive land coverage by the buildings thereon, or the lack of proper light and air and open space, or . . . the defective design and arrangement of the buildings thereon, or faulty street or lot layout, or economically or socially undesirable land uses." 35 P.S. §1702(a)[1];Simco Stores v. Red. Auth., 455 Pa.

---

1. The Supreme Court has noted on at least one occasion that all of these conditions need not coexist in an area to constitute blight. The presence of any one may warrant a finding of blight: Oliver v. Clairton, 374 Pa. 333, 98 A. 2d 47 (1953). See also Attorney General's Official Opinion No. 75-36; 5 Pa. Bull. 2963.

438, 443 n.8, 317 A. 2d 610, 613 n.8 (1974). In this case the only finding or certification of blight with respect to the proposed redevelopment area is found, if at all, in a one page document dated October 24, 1972, and entitled "RESOLUTION OF THE MIFFLIN JUNIATA PLANNING COMMISSION CERTIFYING THE AREA FOR REDEVELOPMENT AND/OR REHABILITATION AS A RESULT OF DISASTER" [Exhibit 1]. The document provided in relevant portion as follows:

"WHEREAS, the Mifflin-Juniata Planning Commission has examined the above described area and find that it presents some or all of the following characteristics which warrant its being considered a redevelopment area as a result of a disaster:

1. Urban Area.

2. Determination by the President to be in a disaster area.

3. That it is eligible under State and local law for the remedial actions proposed.

4. That it is in need of redevelopment and/or rehabilitation as a result of a disaster based on a comparison or [sic] conditions in the area before the disaster, and at the time of filing for financial aid, taking into consideration such factors as damage to street improvements and utilities, destruction or damage to buildings.

"Now, therefore, be it resolved by the Mifflin-Juniata Planning Commission, that:

1. It is found and determined that the above described area is a disaster area because of the conditions enumerated above.

2. The above described area is hereby certified to the Redevelopment Authority of the County of Mifflin as a 'Redevelopment Area' as defined under the Redevelopment Law."

Condemnee argues that this did not satisfy the requirement of a determination of blight as contemplated by the Urban Redevelopment Law. We are constrained to agree with this argument. The four characteristics set forth in the foregoing resolution are not the equivalents of, nor do they bear any relationship to, the characteristics of blight set forth in said law.[2] While the resolution establishes that the area was damaged as a result of natural castastrophe (that the area was inundated by Agnes' flood waters is undisputed), the term blight signifies that type of condition which could generally be characterized as urban obsolescence and decay which is beyond salvage by private rehabilitation and requires relatively large scale action by governmental entities. See Schenck v. Pittsburgh, 364 Pa. 31, 37, 70 A. 2d 612, 615 (1950); 35 P.S. §1702. Also see discussion in Attorney General's Official Opinion No. 75-36.

As employed in said law, the term blight denotes more than physical destruction or casualty resulting from some natural calamity.[3] The distinction between physical destruction or casualty and blight

2. The resolution does refer to "'Redevelopment Area' as defined under the Redevelopment Law." Redevelopment Area is defined as "[a]ny area . . . which a planning commission may find to be blighted *because of the existence of the conditions enumerated in section* [1702] . . ." 35 P.S. §1703(n). (Emphasis supplied.)

3. Physical destruction from natural causes can, of course, constitute or contribute to blight where such destruction or casualty causes or contributes to causing those conditions characteristic of blight as set forth in the Urban Redevelopment Law: 35 P.S. §1702. See Appeal of Goodwill Industries of Central Pa., Inc., 30 Pa. Commonwealth Ct. 273, 373 A. 2d 774 (1977) (involving redevelopment of areas of Harrisburg which had been inundated by flood waters in June, 1972, caused by tropical storm Agnes).

is crucial because the elimination of blighted areas constitutes a proper public purpose for which the power of eminent domain may be exercised: 35 P.S. §1702(d). Where there is no blight there can be no valid power to condemn pursuant to the Urban Redevelopment Law: Faranda Appeal, 420 Pa. 295, 216 A. 2d 769 (1966). The ascertainment and elimination of blight constitutes the very foundation upon which all proceedings pursuant to that statute are premised. "Since the condemnation of property is limited by our Constitution . . . to a taking for a public use . . . the taking is constitutional only if it is for a public use; if the purpose is not for a public use, the taking is unconstitutional." Faranda Appeal, supra at 300-301, 216 A. 2d 722. Elimination or renovation of flood-ravaged neighborhoods or areas is not such a public purpose under the Urban Redevelopment Law as will permit the valid exercise of the tremendous power of eminent domain. If it were, the most respectable and finest urban areas could be razed by planners and redevelopment authorities merely because of physical damage inflicted thereon by a storm or other natural cause. The exercise of the power of eminent domain pursuant to the Urban Redevelopment Law must be "searchingly scrutinized and strictly construed," id. at 305, 216 A. 2d at 774 (concurring opinion of Bell, *C.J.*), in order to prevent such great expansion of the obviously more limited scope and purpose of the Urban Redevelopment Law. Also see Redevelopment Authority of City of Erie v. Owners, 1 Pa. Commonwealth Ct. 378, 391, 274 A. 2d 244, 251 (1971).

The statutorily prescribed conditions which constitute blight are found in a resolution contained in the minutes of the Mifflin County Commissioners dated June 16, 1975. This exhibit, while appearing

to be a resolution of the Borough Council of the Borough of Lewistown, was obviously prepared for the purpose of obtaining Federal financial assistance under subchapter II of the Housing Act of July 15, 1949, 68 Stat. 622, 42 U.S.C.A. §1450 et seq. Qualification for Federal assistance, however, does not obviate the need for compliance with the requirements of State law in the exercise of the power of eminent domain. Relaxed requirements for obtaining access to Federal funds in certain situations do not carve exceptions out of the Urban Redevelopment Law. See Appeal of Moyer, 22 Pa. Commonwealth Ct. 487, 349 A. 2d 781 (1976), an urban redevelopment case wherein the court reviewed the Housing Act of 1949 and, in response to appellant's argument that Federal law was violated by condemnor, replied that nothing in that Federal law suggested that a failure to comply therewith would have any effect on the power, under State law, to condemn real estate. Regardless of the funding aspects of this project, the condemnation proceeded under State law. The requirements of State law were not waived or eliminated by Federal funding requirements. See the Redevelopment Cooperation Law of May 24, 1945, P.L. 982, 35 P.S. §1741 et seq. To conclude otherwise would all but completely vitiate the Urban Redevelopment Law in those numerous instances where Federal financial assistance is available. Additionally, we would note that these findings first appeared in a resolution dated nearly three years after the purported certification of blight during October of 1972 and could hardly be considered supportive of that earlier finding.

Even if a finding of blight were present, the question of whether the existence of a blighted condition

has been proven to exist would still remain. Condemnee's preliminary objections raised this issue. "As to the question of the power and authority of [Redevelopment Authority] to condemn, a proper issue is whether the area in question was, in fact, blighted. Faranda Appeal, [supra]. And such an issue is properly raised by preliminary objections to a declaration of taking. The burden of proving that the area was in fact blighted is on the Authority." Nixon Hotel, Inc. v. Redevelopment Authority of Butler, 11 Pa. Commonwealth Ct. 519, 523, 315 A. 2d 366, 369 (1974), cert. denied, 419 U.S. 842, 95 S.Ct. 74 (1974); Appeal of Miscia, 31 Pa. Commonwealth Ct. 94, 375 A. 2d 840 (1977). The scope of judicial review of a certification of blight, however, is a limited one. As stated in Appeal of Goodwill Industries, Inc., supra, at 276, 373 A. 2d 776: "'The power of discretion over what areas are to be considered blighted is solely within the power of the Authority. The only function of the courts in this matter is to see that the Authority has acted not in bad faith; to see that the Authority has not acted arbitrarily; to see that the Authority has followed the statutory procedures in making its determination; and finally, to see that the actions of the Authority do not violate any of our constitutional safeguards.'" "[A] planning commission and a redevelopment authority are presumed to have performed their duties in good faith, and the [condemnee's] burden of proving fraud or abuse of discretion is a heavy one." Appeal of Eways, 36 Pa. Commonwealth Ct. 394, 397, 388 A. 2d 1108, 1110 (1978). Also see Pidstawski v. S. Whitehall Twsp., 33 Pa. Commonwealth Ct. 162, 380 A. 2d 1322 (1977). A review of the depositions of Authority's executive director and an architect from the firm which

served as planning and redevelopment consultant to Authority reveals that the initial study and planning involved in this project was not great. Authority offered no evidence by way of deposition but merely cross-examined owner of condemned premises and entered into several stipulations. There exists, in short, a paucity of evidence tending to establish that the project area was in fact blighted as specified in the Urban Redevelopment Law. Only a "very preliminary study" preceded the purported certification of blight. Cf., e.g., Simco Stores v. Red. Auth., supra, where an eleven year study preceded determination of blight. This was performed by Authority and its consulting firm,[4] and it was stated that up to this point the planning commission had not done anything. The purported certification of blight was apparently provided to the planning commission by Authority's consultants. The planning commission's involvement was, at best, minimal.[5] While it has been recognized that

_____

4. While the Urban Redevelopment Law would appear to contemplate this phase as within the particular responsibilities of the planning commission, we recognize that this task can be discharged by joint effort of a commission and an authority. See Appeal of Goodwill Industries, Inc., supra.

5. Several planning commissions have operated in Mifflin County during the period relevant to this proceeding. The Mifflin/Juniata Planning Commission appears to have been the functioning entity at the time of the purported finding of blight and preparation of plans for redevelopment of the area involved here. Also in existence at this time, however, was the Mifflin County Planning Commission which was created by the county commissioners by resolution dated March 25, 1966. This body, from a technical standpoint, should have been the active entity in these condemnation proceedings by the Redevelopment Authority for the County of Mifflin, as opposed to

minor and essentially unsubstantial irregularities should not prevail over substantial compliance with statutorily mandated redevelopment procedures, see Oliver v. Clairton, supra, the courts have not shown any willingness to sanction substantial noncompliance. See Appeal of Moyer, supra; Peters v. Reading, 321 Pa. 220, 184 Atl. 23 (1936); Avery v. Com., 2 Pa. Commonwealth Ct. 105, 276 A. 2d 843 (1971). The instant case presents several serious deficiencies. Apparently no comprehensive general plan prepared by the planning commission was in existence at the start of the redevelopment project. Such a plan is required by the Urban Redevelopment Law: 35 P.S. §1710. The informational contents of such a plan are specified in section 301 of the Pennsylvania Municipalities Planning Code of June 1, 1972, P.L. 238, 53 P.S. §10301. Redevelopment efforts are to proceed in conformance with the guidelines, specifications and recommendations put forth in the comprehensive general plan. As a result, redevelopment can then be achieved in a manner consistent with the interests of the larger area of which the blighted segment is a part, thus insuring consistency in the growth, planning and redevelopment of a particular area. See 35 P.S. §1703(m).

---

the Mifflin/Juniata Planning Commission which was to conduct its operations with an emphasis on the needs of the two county region which were found in both counties. The contention that a certification of blight was not made by the proper planning commission may be raised by preliminary objections in an eminent domain proceeding. See Appeal of Eways, supra, wherein similar contentions were recognized but not decided due to failure of proper preservation for review. Although we would be reluctant to vitiate otherwise proper proceedings if this were the only impropriety, such is not the case here.

Once blight is found and a redevelopment area plan is formulated by the planning commission, 35 P.S. §1703(o), the Authority is to prepare a redevelopment proposal: 35 P.S. §1703(r); 35 P.S. §1710(a). The procedure followed in the instant case essentially reversed this procedure. Plans were developed after the area was designated a target of redevelopment, in direct contrast to the scheme contemplated by the Urban Redevelopment Law.

As alluded to earlier, the preliminary inspections and surveys conducted primarily by Authority's consultant were not in-depth examinations of the proposed redevelopment area. Exterior visual examination served as the principal method of evaluation of premises in the proposed project area. While we recognize that every building or property which is condemned need not be blighted if situated within a blighted area, it should be pointed out here that said inspections occurred only one month after flood waters receded. No interior inspections were made of the premises involved. In a case such as this, with the existence of a finding of blight, not the wisdom thereof, at issue, considerations such as substantiality of inspections of condemned premises appear very relevant, inasmuch as it is the function of the courts to provide a check against arbitrary or bad-faith actions or abuses of discretion on the part of those charged with the exercise of discretion in redevelopment matters. Cf. Appeal of Goodwill Industries, Inc., supra, wherein condemnee, in an attempt to prove that the redevelopment area was not blighted, relied upon testimony of witnesses who admitted "that they had not inspected the buildings in the area and that their testimony

was based only upon a general impression of the area." The court ruled that this was "no evidence that the Authority's actions in condemning these properties were arbitrary or capricious. . . ." Id. at 277, 373 A. 2d at 776. A finding that Authority's actions were arbitrary or capricious would not be so implausible where the only planning and surveying prior to certification of blight was visual exterior inspection within one month after severe flooding. Bearing in mind the distinction between blight as defined in the Urban Redevelopment Law and physical casualty and destruction caused by natural forces, as discussed earlier, said exterior visual inspections, followed by Exhibit No. 1, purported certification of blight, hardly constitute proof that condemnee's premises or the proposed redevelopment area were in fact blighted and a proper subject of redevelopment through use of the power of eminent domain.[6]

Delay of this decision is attributable to condemnor's failure to file its brief, as requested by this court, until November 13, 1978, well over one year after filing of condemnee's brief on August 29, 1977.

## ORDER

Now, February 16, 1979, preliminary objections of condemnee to Authority's declaration of taking

---

6. Declaration of taking was not filed until September 26, 1975, over three years after flooding and visual inspections of redevelopment area. As to the condition of the premises in 1975, the record indicates that a substantial amount of rehabilitative work had been done by condemnee to his premises after the June 1972 flood.

are sustained and title to all that certain tract of land with the structures thereon erected in the Sixth Ward of the Borough of Lewistown, County of Mifflin and State of Pennsylvania, fully described in Exhibit "A" to declaration of taking is hereby revested in Robert E. Elsesser.