Faranda Appeal.

Argued October 11, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused February 28, 1966.

*W. Roger Simpson,* for appellant.

*Frank Edward Roda,* with him *Stein, Storb and Mann,* for appellee.

OPINION BY MR. JUSTICE JONES, January 17, 1966:

This is an appeal from an order of the Court of Common Pleas of Lancaster County which dismissed preliminary objections to a "declaration of taking" filed by the Redevelopment Authority of the City of Lancaster [Authority].

On April 9, 1965, the Authority filed a "declaration of taking" of certain properties in the second block of North Queen Street in the City of Lancaster [City]. The reason underlying such condemnation was to accomplish the alleged public purpose of carrying into effect a duly approved proposal and plan for the redevelopment of an area which had been certified as a blighted area by the Planning Commission of the City. One of the properties affected by the Commis-

sion's plan was property located at 170-172 North Queen Street owned by one Tony Faranda, a property improved with a three story brick granite building utilized by Faranda as a taproom with family living quarters on the second and third floors.

On May 7, 1965—29 days after service of notice upon him—Faranda filed preliminary objections to the "declaration of taking". The court below then granted the Authority leave to file an amended "declaration of taking" to change one of the averments complained of, by Faranda in his original objections. An amended "declaration of taking" was filed on May 19, 1965, to which Faranda again filed preliminary objections wherein one of the prior objections was again raised, and three new objections were interposed. The court en banc dismissed the preliminary objections.

Initially, it must be noted that we have recently held that preliminary objections constitute the *exclusive method* of challenging condemnation proceedings under the new Eminent Domain Code, infra; *Mahan v. Lower Merion Township*, 418 Pa. 558, 212 A. 2d 217.

Faranda's first preliminary objection is directed to the *adequacy of the description of the purpose* of the condemnation contained in the "declaration of taking". Faranda urges that, since the "declaration of taking" fails to state eo nomine that the purpose of the condemnation is the *elimination* of a blighted area, the "declaration" is defective under the statutory mandate set forth in the Eminent Domain Code (Act of June 22, 1964, P. L. 84, 26 P.S. §1-402(b)(4)), which provides that the "declaration of taking" shall contain "a brief description of the purpose of the condemnation and the need therefor." The lower court, in dismissing this objection, held that an examination of the language of the "declaration" indicated that there was a sufficient statement of the purpose of the condemnation to satisfy the statutory requirement. With such conclusion we agree.

In compliance with the statute, the Authority prepared its "declaration of taking" to read as follows: "4. That the condemnation by the Redevelopment Authority was in order to accomplish the public purpose of carrying into effect the duly approved proposal and plan for the *redevelopment* of the North Queen Street Project known as Project No. R-178, located in the First Ward of the City of Lancaster, County of Lancaster and Commonwealth of Pennsylvania. [Emphasis supplied]. 5. The purpose of the condemnation is to acquire the properties located within the area certified as blighted by the Planning Commission of the City of Lancaster in order that said areas *may be replanned and redeveloped* to promote the public health, safety, convenience and welfare. [Emphasis supplied]. 6. The property of the owner as shown in the caption is located within the said blighted area and is needed by the Redevelopment Authority in order to properly carry out the duly approved plan for the *redevelopment* of the said area and project." (Emphasis supplied).

While the "declaration" does not employ the word "elimination", it does aver that the purpose of the "taking" is to effectuate the approved proposal and plan of redeveloping North Queen Street, a certified blighted area. The end result would be the *elimination* of the alleged blighted area.

This view of the sufficiency of language of the "declaration of taking" is reinforced by the statutory definition of "redevelopment", a term repeatedly used, as we have noted, in the "declaration of taking". The definition of "redevelopment" in the Urban Redevelopment Law (Act of May 24, 1945, P. L. 991, §3; 35 P.S. §1703.(m)) removes any doubt that the effect of the proposed redevelopment of the area would be the elimination of the blighted structures located therein. The statute states: "(m) 'Redevelopment'—Undertakings and activities for the *elimination* of blighted areas.

Such undertakings and activities may include the planning, replanning, acquisition, rehabilitation, improvement, clearance, sale, lease or other disposition of land, buildings or other improvements in blighted areas, or portions thereof . . . [Emphasis supplied]." This statutory definition lends support to the conclusion that the Authority was using the term "redevelopment" in its "declaration of taking" in the statutory sense and that the averment is sufficient to meet the statutory requirements. For the above reasons Faranda's preliminary objection in this respect is without merit and was properly dismissed.

The second objection urged by Faranda is that the Authority lacked the power to take his property because, at the time of taking, the Authority had neither selected a redeveloper nor had entered into a redevelopment contract. In this connection, it must be noted that, by stipulation, the parties agreed that, subsequent to the taking, a redeveloper had been selected, but the lack of a redevelopment contract is still urged by Faranda as fatal to the power of taking.

The Authority is given the power of eminent domain under the Urban Redevelopment Law, supra. There is no requirement in this statute that a redeveloper must be chosen or that a contract be entered into with a redeveloper for the re-use of the land as prerequisites before the Authority can condemn property. Similarly, the Eminent Domain Code of 1964, supra, which neither enlarges nor diminishes the power of condemnation given by law to the condemnor (§402); is equally silent as to the steps that Faranda urges are prerequisites to taking. Both of these statutes find their bases in the provisions of the Constitution of Pennsylvania, Article I, §10, which requires that private property be taken only for public use. This constitutionally mandated requirement sets no order of activity in the condemnation of property so long as

the purpose of the condemnation satisfies the constitutional and statutory requirements.

Thus, it seems painfully clear that there is neither decisional nor statutory authority to sustain Faranda's contention. In sustaining the lower court's dismissal of this objection, we are mindful of the words of this court in *Blumenschein v. Pittsburgh Housing Authority*, 379 Pa. 566, 572, 573, 109 A. 2d 331: ". . . By a host of authorities in our own and other jurisdictions (citing cases) it has been established as an elementary principle of law that courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or *into the details of the manner adopted to carry them into execution* . . ." (Emphasis supplied). In the absence of a showing of any fraud, abuse of discretion or bad faith, Faranda's objection must be dismissed.

Faranda's final objection raises a more difficult and novel question. By his preliminary objections, Faranda has challenged the Authority's *power and right* to condemn the property in question by his assertion that the said property is not, *in fact,* blighted. Since the condemnation of property is limited by our Constitution, supra, to a taking for a *public use* and since the only basis for the Authority's present taking is that the elimination of a blighted area is such a public use (*Belovsky v. Redevelopment Authority of Philadelphia*, 357 Pa. 329, 54 A. 2d 277), Faranda seeks to show that the area is not blighted thereby negativing the *power or right* of the Authority to condemn. The Authority counters by saying that an action in equity rather than a preliminary objection is the proper procedural method to follow in challenging the Authority's taking. In the Authority's view, a preliminary objection should be limited to attacking the wisdom, rather than the lawfulness, of the condemnation.

An examination of the language of §406(a) of the Eminent Domain Code, supra, clearly substantiates the soundness of the view urged upon this court by Faranda. That section provides: ". . . Preliminary objections shall be limited to and shall be the *exclusive* method of challenging (1) the *power or right* of the condemnor to appropriate the condemned property unless the same has been previously adjudicated . . ." (Emphasis supplied). See also: Snitzer, Pennsylvania Eminent Domain, §406.1 wherein the author says: "Section 406 specifically provides that the filing of preliminary objections shall be the sole and exclusive remedy available to condemnees to challenge the condemnation. (As the comment notes indicate, the intent of this section is to provide the 'exclusive method of challenging the power to condemn, the sufficiency of the security, the declaration of taking and procedure . . .)'" Thus it is clear that the new Eminent Domain Code sets forth a complete and exclusive method of challenging the taking. The Authority's argument suffers from the inherent fallacy of urging that Faranda is questioning not the power of the Authority to condemn but rather the wisdom of the action it has taken. As we have said, supra, the taking is constitutional only if it is for a public use; if the purpose is not for a public use, the taking is unconstitutional. Herein, the Authority bottoms its public use in declaring the area involved to be blighted, a determination challenged by Faranda, thereby making the thrust of Faranda's attack directly to the Authority's power, not to its wisdom. *McSorley v. Fitzgerald*, 359 Pa. 264, 59 A. 2d 142; *Belovsky*, supra; *Ormsby Land Co. v. Pittsburgh*, 276 Pa. 68, 119 A. 730.

The Authority urges that Faranda's remedy is by a suit in equity. However, we have recently held that a court of equity has no jurisdiction to determine whether a municipal authority has the right of eminent

domain or whether it has properly exercised any right of eminent domain; *Cunfer v. Carbon Airport Authority*, 414 Pa. 408, 200 A. 2d 768. See also *Balazick v. Dunkard-Bobtown Municipal Authority*, 414 Pa. 182, 199 A. 2d 430. Similarly, the many cases cited by the Authority in its brief for the proposition that equity is the proper forum are not controlling in that such cases were decided prior to the passage of the present Eminent Domain Code.

By the clear language of the statute, the legislature has mandated that preliminary objections constitute the exclusive method of challenging the power of the condemnor to take private property. Faranda has challenged the Authority's *right to condemn* and has raised this challenge properly through the medium of preliminary objections. "It is a commonplace that where the legislature has provided a remedy or procedure, that remedy or procedure is exclusive and alone must be pursued." *Schwab v. Pottstown Borough*, 407 Pa. 531, 534, 180 A. 2d 921, 923; *Cunfer v. Carbon Airport Authority*, supra; *Jacobs v. Fetzer*, 381 Pa. 262, 112 A. 2d 356.

The lower court erred in dismissing this objection of Faranda and the case must be remanded with directions to the lower court to take testimony, by deposition or otherwise, on the question of whether the area herein involved is *in fact* blighted.

Order vacated. Costs to abide the event.

————

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

I concur in the remand, but deem it desirable to express the reasons for my views.

It is important to recognize at the very outset that the Urban Redevelopment Law* and the enormous powers ostensibly granted therein must be carefully ex-

————
* Act of May 24, 1945, P. L. 991, 35 P.S. §1701 et seq.

amined in the light of the Constitution of the United States and of Pennsylvania which ordain and guarantee the right of private property. Article I, §1, of the Pennsylvania Constitution provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, *of acquiring, possessing and protecting property*\* and reputation, and of pursuing their own happiness." Nevertheless the Authority contends that the Act gives the sovereign power of eminent domain to these few appointed persons to condemn not only every property which they believe is dilapidated, but *also every area* or region which they believe contains *some* dilapidated properties. For these reasons as well as several others which will be discussed, the Act and its claimed wide powers must be strictly construed.

One of the most highly prized Constitutional rights of every American citizen is the right to own and possess his own home! It may be large, medium or small, it may be one or two or three stories; it may be a ranch house or a row house, or a hut; or, in the eyes of some, it may be attractive or ugly, but it is yours and if you like it or love it, why should anyone or any political body have a right to take it from you in order to make it or *the area* in which it is situate *more economically prosperous*?

Stripped of its attractive tinsel and pretty trappings, this blighted area Act, supra, as frequently interpreted by some non-elected non-sovereign Redevelopment Authorities, is one of the most unjust and unwise Acts ever passed. This Act does not cover or even pertain to the elimination of slums as in the Slum Clearance Act, i.e., Housing Authorities Law of 1937.\*\* The

---

\* Italics throughout, ours.

\*\* Act of May 28, 1937, P. L. 955, 35 P.S. §1541.

304

Act is so broad that it does not limit the Authority's power to condemn and take such properties as are dilapidated, but, we repeat, permits the taking of a large area in which only a few properties are dilapidated. Moreover, realistically speaking, it has nothing to do with the public safety, or health, or morals. Its real and practical purpose and intent, although cloaked in the spurious guise of public welfare, is to make any and every community it chooses to denominate "dilapidated" *more economically prosperous* no matter what heartbreaks it brings to home-owners or losses to businessmen. For example, a husband and wife, or a widow, may love their home and like their neighborhood, but now because of the theories of well-meaning or star-gazing planners, they have to move to a distant place and start life all over again among strangers. And what happens to a little neighborhood business man who loses his home and his business and his customers? What will recompense a liquor licensee (whose business is subject to a quota system) when he cannot get a license in the new location to which, because of the Redevelopment Authority, he is compelled to move? And what about churches? Even churches and other houses of worship are not exempt from the ceaseless craving of many for material prosperity and for constantly expanding political power. Too often, the planners consider themselves "Solomons," with unbounded, unfettered and limitless discretionary power to appropriate and condemn as dilapidated (1) any and every property they believe is dilapidated; and (2) *as large an area* as they believe can be made economically more prosperous. In their desire for greater economic prosperity, these planners do not hesitate to tear down and destroy churches *in any area which they may deem "blighted."* See, for example, *St. Peter's Roman Catholic Parish v. Urban Redevelopment Authority,* 394 Pa. 194, 146 A. 2d 724. In that case, the Urban Redevelopment Au-

thority condemned and destroyed, in the name of "economic convenience and progress," St. Peter's Church in Pittsburgh, which was considered by many to be the most beautiful Catholic Church in America.

As this Court aptly said in *Schwartz v. Urban Redevelopment Authority*, 411 Pa. 530, 192 A. 2d 371 (page 536) : "This Court has held that the mushrooming of authorities at all levels of government and the frequent complaints that the agencies arbitrarily or capriciously and unintentionally ignore or violate rights which are ordained or guaranteed by the Federal and State Constitutions and established law make it imperative that a check rein be kept upon them. Keystone Raceway Corp. v. State Harness Racing Commission, 405 Pa. 1, 173 A. 2d 97 (1961)."

These are some of the reasons why *this "blighted area" Act and the powers granted therein must*, in the light of the Constitutional guarantee of private property and the American heritage of individual Freedom, *be searchingly scrutinized and strictly construed*. This the lower Court failed to do.

I concur in the remand.