Simco Stores, Inc., et al. *v.* Philadelphia
Redevelopment Authority.

Argued February 7, 1973, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*Robert W. Maris* and *Barry E. Ungar,* with them
*Theodore R. Mann, Mann and Ungar,* and *Dilworth,
Paxson, Kalish, Levy & Coleman,* for appellants.

*Nathan L. Posner,* with him *Victor Wright* and, of
counsel, *Fox, Rothchild, O'Brien & Frankel,* for appel-
lee.

PER CURIAM OPINION, April 5, 1973:

The appellants were owners and tenants of commercial properties located on the north side of the 900 block of Market Street in Philadelphia. Their properties were condemned by the Redevelopment Authority of the City of Philadelphia. The appellants filed preliminary objections to the Authority's declaration of taking. All of the objections were dismissed and these appeals followed.

Six days of hearings were held below. We have carefully reviewed the record and have concluded that Judge HAROLD BERGER's opinion ably and correctly disposes of the questions presented for our review. We affirm the court's order on Judge BERGER's opinion following:

"This matter, involving the condemned properties located in the Market East sub-area of the Center City Redevelopment Area in Philadelphia is before the court on preliminary objections filed pursuant to Section 406 of the Eminent Domain Code of 1964. In substance, the objections are that:

"1. The City of Philadelphia by having imposed excessive and unreasonable real estate taxes upon the condemned properties, deprived the property owners of the necessary cash flow with which to maintain them so that they depreciated in value, thereby adversely affecting their fair market value as of the time of condemnation.

"2. Condemnees were harassed by the Redevelopment Authority's repeated attempts to dispossess the condemnees and their tenants after condemnation, but before the disposition of preliminary objections.

"3. Gimbel Brothers, Inc. should not have been selected as the redeveloper to the exclusion of certain of the condemnees-objectors.

"4. The Eminent Domain Law offends Article I, Section 10, of the Pennsylvania Constitution in not

allowing for a determination of the sufficiency of the Redevelopment Authority's security until after title to property has passed to the condemnor.

"5. The Redevelopment Authority did not fully comply with Section 6(a) of the ordinance of City Council approved February 26, 1970, dealing with the acquisition of the properties involved.

"6. The Center City Redevelopment Area of Philadelphia is not blighted and the City Planning Commission acted arbitrarily in so certifying.

"We will consider each of objectors' claims separately.

"I.

"A challenge to the condemnation because the value of the properties might be diminished as of the date of taking because of the alleged arbitrary action of the City of Philadelphia in imposing excessive and unreasonable real estate taxes so that the owners were deprived of the cash necessary to maintain the value of the properties is not a challenge that may be raised by preliminary objections.

"Preliminary objections filed in accordance with the Eminent Domain Code of 1964, Special Sess., P. L. 84, 26 P.S. Section 1-101 et seq., may raise only those matters enumerated in Section 406. Department of Highways Appeal, 429 Pa. 254, 239 A. 2d 343 [1964].

"Section 406 provides:

"'(a) Within thirty days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking. The court upon cause shown may extend the time for filing preliminary objections. Preliminary objections shall be limited to and shall be the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property unless the same has been previously adjudicated; (2) the sufficiency of the security; (3) any other procedure followed by the

condemnor; or (4) the declaration of taking. Failure to raise these matters by preliminary objections shall constitute a waiver thereof.

" '(b) Preliminary objections shall state specifically the grounds relied upon.

" '(c) All preliminary objections shall be raised at one time and in one pleading. They may be inconsistent.

" '(d) The condemnee shall serve a copy of the preliminary objections on the condemnor within seventy-two hours after filing the same.

" '(e) The court shall determine promptly all preliminary objections and make such preliminary and final orders and decrees as justice shall require, including the revesting of title. If preliminary objections are finally sustained, which have the effect of finally terminating the condemnation, the condemnee shall be entitled to damages as if the condemnation had been revoked under Section 408, to be assessed as therein provided. If an issue of fact is raised, the court shall take evidence by depositions or otherwise. The court may allow amendment or direct the filing of a more specific declaration of taking.'

"It is clear that Section 406(a)(3) permits only those procedures followed by the *condemnor* to be challenged by preliminary objections. The Redevelopment Authority, and not the City of Philadelphia, is the condemnor in this matter and objectors have not shown that the City's procedures in this respect may be imputed to the Redevelopment Authority.

"II.

"Objectors' contention that the condemnation proceedings were tainted by the Redevelopment Authority's repeated attempts to dispossess condemnees and their tenants despite the provisions of the February 26, 1970 ordinance of City Council must also be rejected.

"Section 406(b) of the ordinance provides that '[n]o business proposed for acquisition under this proposal

shall be required to remove from the site within one year from the date on which the Redevelopment Authority actually acquires the property which that business now occupies.' The conduct of condemnors in forwarding eviction notices to condemnees and their tenants after the filing of the declaration of taking, but before the expiration of the one-year period, as harassing and improper as the conduct may have been, cannot affect the validity of the condemnation itself.

"Section 406(a)(3) of the Eminent Domain Code authorizing preliminary objections to challenge 'any other procedure followed by the condemnor' cannot be construed to embrace the action of the condemnor described above which occurred after the filing of the declaration of taking. The term 'any other procedure' refers to procedures such as are set forth in Sections 403 through 405, inclusive, and other procedures that may be directly related to the filing of the declaration of taking. To hold otherwise would be to frustrate the clear intent of Section 406, which requires that preliminary objections, the sole procedural means of challenging the validity of a condemnation, shall be filed by condemnees within thirty days after service of the notice of the condemnation so that the issue of validity may be disposed of as soon as possible after the taking. See Comment, Joint State Government Commission 1964 Report, 26 P.S. Section 1-406.

"To allow matters dealing with collateral procedures which might not occur until one year after the filing of the declaration of taking to affect the validity of a condemnation, otherwise valid, would nullify the legislative intention to afford a speedy determination of this critical issue.

"III.

"The limited nature of preliminary objections and the matters to which they may be directed, as enumerated in Section 406 of the Eminent Domain Code re-

quire dismissal of the argument of objectors that con-
demnees instead of Gimbel Brothers, Inc., should have
been selected as the redeveloper. The identity or selec-
tion of the redeveloper is not a matter for challenge in
these proceedings. The Redevelopment Authority is
given the power of eminent domain under the Urban
Redevelopment Act and there is nothing in this statute
which requires the Authority to select a redeveloper
from among the condemnees or prohibits the selection
of Gimbel Brothers, Inc., as the redeveloper. See Far-
anda Appeal, 420 Pa. 295, 216 A. 2d 769 [1966]

## "IV.

"Objectors argue that the Eminent Domain Code is
unconstitutional in that it does not permit the testing of
the sufficiency of the Redevelopment Authority's bond
until after title to the property has passed to the con-
demnor, in violation of that provision of Article I, Sec-
tion 10 of the Pennsylvania Constitution which pro-
vides: '. . . nor shall private property be taken or ap-
plied to public use, without authority of law and with-
out just compensation being first made or secured.'
This contention of condemnees must also be dismissed.

"The security of just compensation is accomplished
by the filing of a bond with the declaration of taking.
Section 406(a)(2) of the Eminent Domain Code pro-
vides that the sufficiency of the security may be chal-
lenged by preliminary objection. If the security is in-
sufficient, the court may order an increase to comply
with the constitutional mandate. Municipal Authority
of Zelienople Appeal, 431 Pa. 306, 245 A. 2d 451 [1968].
If the condemnor fails to comply with the order increas-
ing the security, then the condemnation would not meet
constitutional requirements and the court could order
the revesting of title in condemnees. These procedures
adequately safeguard the constitutional rights of all
condemnees.

## "V.

"Objectors contend that title to the properties should revest in condemnees because of non-compliance with the provisions of Section 6 of the February 26, 1970 ordinance of City Council, which authorized the Redevelopment Authority to condemn the properties here involved.

"The pertinent provisions of Section 6 of the ordinance are:

" '(a)  The Redevelopment Authority will take all actions including condemnation to acquire all the properties proposed for acquisition no later than December 31, 1970.

" '(b)  No business proposed for acquisition under this proposal will be required to remove from the site within one year from the date on which the Redevelopment Authority actually acquires the property which that business now occupies.

" '(c)  All site occupants will be required to remove from all properties having been acquired under this proposal no later than two years from the date on which the Redevelopment Authority acquires such properties.

" '(d)  The redeveloper selected for the site bounded by Ninth, Tenth, Market and Filbert Streets must within one year from the date on which the Redevelopment Authority acquires the property under this proposal, execute a redevelopment contract and post a deposit of not less than ten percent of the reuse value of the site.

" '(e)  The only basis for the extension of the above date is the result of delays due to acts of God, strikes, and other delays beyond the control of the appropriate governmental agencies.'

"The Redevelopment Authority filed its declaration of taking in respect to the properties of condemnees in Market East on May 27, 1970.  Objectors argue that since a redevelopment contract was not executed within

one year from the date of condemnation, in accordance with the provisions of Section 6(d) of the ordinance, that the condemnation was invalid and title should revest in condemnees. This argument fails to recognize that when the Redevelopment Authority filed the declaration of taking on May 27, 1970, it was at that time in full compliance with the terms of its authorization and the condemnation was effective and valid as of that date. Section 402(a) of the Eminent Domain Code.

"The power of this court to revest title to the property in condemnees is conferred by Section 406(e) of the Code, which empowers the court to make such preliminary and final orders as justice shall require, including the revesting of title. The extent of this authority was considered by Mr. Justice COHEN in Department of Highways Appeal, supra: 'In order to determine what the legislature intended by the use of the language "such final orders and decrees as justice shall require" one must analyze section 406(e) in connection with section 406(a) wherein the legislature has enumerated the nature of the preliminary objections that may be raised by the condemnee. Under 406(a) the condemnee may preliminarily object to: (1) the power or right of the condemnor to condemn the property involved, (2) the sufficiency of the security, (3) the procedures followed by the condemnor and (4) the declaration of taking. Section 406(e) authorizes the court to make orders and decrees necessary only in furtherance of any determination rendered with respect to those enumerated preliminary objections; i.e., *orders revesting title in the condemnee if the proceedings are declared a nullity*, orders increasing the adequacy of the security posted by the condemnor, orders curing defects in the procedures followed by the condemnor and orders relating to deficiencies in the declaration of taking.' (Emphasis added.)

"Since the condemnation by the Redevelopment Authority on May 27, 1970, was valid, the provisions of Section 6(d) of the ordinance cannot retrospectively make invalid such condemnation. Here, the proceedings cannot be declared a nullity. The statute or municipal authority conferring the power to condemn was not defective; the enabling statute was not constitutionally **offensive**; the condemnation was for a public as distinguished from a solely private need; and the condemnor has not failed to comply with any outstanding order increasing the sufficiency of the security. Revesting of title is a drastic remedy to be used only for substantive defects in the condemnation while procedural defects may be corrected by appropriate court order. See Upper Dublin Twp. Authority v. Piszek, 420 Pa. 536, 218 A. 2d 328 [1966].[1]

"VI.

"The Urban Redevelopment Law of 1945, P. L. 991, 35 P.S. Section 1701 et seq., provides for constitutionally permissible procedures by which municipalities may utilize the right of eminent domain to remedy the problems of urban blight arising from conditions described in the statute. Belovsky v. Redevelopment Authority, 357 Pa. 329, 54 A. 2d 277 [1947].

"A prerequisite to the acquisition of properties under the law is the certification of the appropriate planning commission of the proposed redevelopment area as

___

[1] Judge BERGER might also have noted on this subject that a Letter of Agreement was approved by the Authority and Gimbels within a year from acquisition. While this was tentative in some respects and not technically a redevelopment contract as that document is described by statute and regulation in the field, it is arguable that it sufficiently answered City Council's requirement. We might also observe that the time limitation for the execution of a redevelopment contract provided by paragraph (d) seems to us to be not for the purpose of protecting the condemnees, as is paragraph (b), but for the purpose of expediting the project in the public interest.

being blighted. Oliver v. City of Clairton, 374 Pa. 333, 98 A. 2d 47 [1953].

"Although it might be argued that the language in Faranda Appeal, supra, indicates differently, the overwhelming weight of authority in Pennsylvania* limits the court's determination of the factual issue of blight to a review of the certification to that effect by the planning commission. In Golden Dawn Shops, Inc. v. Redevelopment Authority, 3 Pa. Cmwlth. Ct. 314, 282 A. 2d 395 [1971], the court quoted Mr. Justice O'BRIEN in Crawford v. Redevelopment Authority, 418 Pa. 549, 554, 211 A. 2d, 866, 868: 'The power of discretion over what areas are to be considered blighted is solely within the power of the Authority. The only function of the courts in this matter is to see that the Authority has acted not in bad faith; to see that the Authority has not acted arbitrarily; to see that the Authority has followed the statutory procedures in making its determination; and finally, to see that the actions of the Authority do not violate any of our constitutional safeguards.' See also Oliver v. City of Clairton, supra; Schenck v. City of Pittsburgh, 364 Pa. 31, 70 A. 2d 612 [1950]; Lazrow v. Philadelphia Housing Authority, 375 Pa. 586, 101 A. 2d 664 [1954]; Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566, 109 A. 2d 331 [1954].

"It is presumed that the Planning Commission performed its duties in good faith. The burden is upon objectors to prove the contrary; that is, that the Commission acted in a capricious or fraudulent manner or that its actions were based upon private motives inconsistent with the public welfare. This burden is a heavy one. Washington Park, Inc. Appeal, 425 Pa. 349, 229 A. 2d 1 [1967]. In this case, there was no evidence that the Planning Commission acted in a capricious or fraud-

---

* "as well as other jurisdictions with statutes similar to our Urban Redevelopment Law." See 44 ALR 2d 1414.

ulent manner or that its actions were based upon private motives.

"The Executive Director of the City Planning Commission, whose evidence was uncontradicted, testified, inter alia, that the Commission's certification as to blight in the Center City Redevelopment Area was made after extensive survey as to the existing land use, the obsolete streets and walkways and the archaic traffic patterns inherited from William Penn's architect.

"Objectors offered expert testimony and other evidence to prove that the area was not blighted. This evidence was of minimal probative value because of its general nature. Objectors failed to present sufficiently cogent facts to support the opinions expressed. Moreover, Sec. 1702 of the Urban Redevelopment Law enumerates many conditions leading to blight, any one of which would justify the Planning Commission's certification of the entire area: Oliver v. City of Clairton, supra. Objectors' evidence fell far short of showing that none of the conditions leading to blight existed.

"Accordingly, the court finds that the certification of the Planning Commission that the Center City Redevelopment Area was blighted was not made in a capricious or fraudulent manner.

. . ."

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent.

A contention that an area certified by a redevelopment authority is not, in fact, blighted directly challenges the power of the condemnor to condemn a specific property and is a question that must be decided by the courts on the basis of a record. *Faranda Appeal,* 420 Pa. 295, 216 A. 2d 769 (1966). The majority today affirms on the lower court's opinion, which disposed of appellants' preliminary objection that the Center City

Redevelopment Area of Philadelphia was not in fact blighted, even though it erroneously and in contradiction to *Faranda* held that "[a]lthough it might be argued that the language in Faranda Appeal, supra, indicates differently, the overwhelming weight of authority in Pennsylvania limits the court's determination of the factual issue of blight to a review of the certification to that effect by the planning commission." (Footnote omitted.)

The lower court amazingly does not cite one Pennsylvania case for its conclusion that "the overwhelming weight of authority in Pennsylvania" is contrary to *Faranda.* My research indicates that *Faranda* is the most recent pronouncement of our Supreme Court on the question, and I also fail to uncover *any* Pennsylvania authority, overwhelming or otherwise, to the contrary.

Yet it is on this assumption, that *Faranda* is not the controlling law, that the lower court and the majority decide that the question of whether an area is in fact blighted is determined by "a review of the certification to that effect by the planning commission" and not on the record evidence.

Here the certified area includes all of Center City Philadelphia, bounded by the Delaware and Schuylkill Rivers and Spring Garden and South Streets. A reading of the record in this case discloses that the evidence before the lower court supports only a finding that 15% of the certified area was blighted in 1963 when the area was certified by the planning commission. I am unaware of any case, and the lower court cites none, holding that a certified area is blighted, in fact, upon a showing of 15% blight.

To place our imprimatur on such a showing as established by the record before us brings to fruition the fears and admonitions expressed by Justice PATTERSON when he wrote, dissenting, in *Belovsky v. Redevelop-*

*ment Authority of Philadelphia*, 357 Pa. 329, 347, 54 A. 2d 277, 286 (1947) : "Pursuant to the powers given, the authority, in conjunction with the planning commission and governing body, may successfully condemn all property within the territorial limits of a city." Likewise, it would be a prime example of Chief Justice BELL'S observation in his concurring opinion in *Faranda Appeal*, 420 Pa. at 304, 216 A. 2d at 774, when he wrote that "[t]oo often, the planners consider themselves 'Solomons,' with unbounded, unfettered and limitless discretionary power to appropriate and condemn as dilapidated . . . *as large an area* as they believe can be made economically more prosperous."

Perhaps the magnitude and public importance of the project should be overriding, but I am compelled *by this record* to conclude that the area certified was overly broad and that it was not, in fact, blighted.