Simco Stores et al., Appellants, *v.* Redevelopment Authority.

Argued September 25, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Theodore R. Mann,* with him *William T. Coleman, Jr., Robert W. Maris, Mann and Ungar,* and *Dilworth, Paxson, Kalish, Levy & Coleman,* for appellants.

*Nathan L. Posner,* with him *Victor Wright,* and *Fox, Rothschild, O'Brien & Frankel,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, March 25, 1974:

Appellants were owners and tenants of commercial properties located on the north side of the 900 block of Market Street, which were condemned by the Redevelopment Authority of the City of Philadelphia (Authori-

ty). They seek a reversal of a Commonwealth Court decision dated April 5, 1973, in which that Court, adopting the lower court's opinion, affirmed the lower court's order dismissing appellants' preliminary objections to the Authority's declaration of taking. *See* 8 Pa. Commonwealth Ct. 374, 302 A. 2d 907 (1973) (MENCER, J., dissenting). We granted allocatur and this appeal followed.

In 1963, the City Planning Commission (Commission) certified that the area from Spring Garden Street to South Street and from the Delaware River to the Schuylkill River was "blighted" as that term is defined in the Urban Redevelopment Law.[1] In addition to certifying some new property, this certification consolidated several smaller areas which had been previously and separately certified as "blighted."[2] Pursuant to this certification, the Authority condemned appellants' properties on May 21, 1970.

Appellants contend that the lower court erred in dismissing the following preliminary objections to the declaration of taking:

"(1) The area involved was not 'blighted' and that the Commission acted arbitrarily and capriciously in certifying the area as 'blighted.'

"(2) The power and right of the Authority to dispossess appellants or to do anything further in the premises had expired by the explicit terms of the City Council Ordinance authorizing the condemnation.

"(3) The Authority's procedures constituted an unconstitutional means of achieving a valid legislative purpose.

"(4) The activities of all the governmental and quasi-governmental bodies in any way connected with

---

[1] Act of May 24, 1945, P. L. 991, §§1-19, *as amended*, 35 P.S. §§1701-1719 (Supp. 1973).

[2] The area which includes appellants' properties was originally certified in 1952.

the taking constituted such a gross abuse of condemnees' basic rights as to require a revestment of title."

Under Section 406 (a) of the Eminent Domain Code,[3] a preliminary objection is the exclusive procedure to challenge the power or right of the Authority to condemn property. In their first preliminary objection, appellants allege that "the area involved was not blighted." In *Faranda Appeal*, 420 Pa. 295, 216 A. 2d 769 (1966), this Court acknowledged that such a claim does challenge the Authority's power or right to condemn the property in question and in remanding that case we directed the lower court to take testimony on the question of whether the area was in fact blighted. Citing *Faranda* as authority, appellants argue that the trial court here should have made a finding as to whether the area was in fact blighted and should not have limited itself to a review of the certification by the Commission.[4] The direction in *Faranda* to take testimony on the question of whether the area was in fact blighted should not be read so broadly. That case dealt with a situation where *no* testimony was allowed by the trial court on the issue of blight. An offer of proof was deemed properly presentable there to assure judicial review of the preliminary objection.[5] The scope of ju-

---

[3] Act of June 22, 1964, P. L. 84, §406, *as amended*, 26 P.S. §1-406 (Supp. 1973).

[4] Regarding the function of the court below, this Court stated in *Crawford v. Redevelopment Authority*, 418 Pa. 549, 554, 211 A. 2d 866, 868 (1965) : "The power of discretion over what areas are to be considered blighted is solely within the power of the Authority. The only function of the courts in this matter is to see that the Authority has acted not in bad faith; to see that the Authority has not acted arbitrarily; to see that the Authority has followed the statutory procedures in making its determination; and finally, to see that the actions of the Authority do not violate any of our constitutional safeguards."

[5] The lower court in *Faranda* reasoned that since bad faith or arbitrary action was not specifically asserted, a preliminary objec-

dicial review, however, was not affected by that decision. On review a condemnee should be given an opportunity to prove that a certification of blight is arbitrary or capricious. *Faranda* affords a condemnee that opportunity.[6] It does not require the lower court to substitute its discretion for that of the legislatively-granted discretion of the Commission.

Appellants also maintain that certification of the entire center city Philadelphia as blighted was arbitrary.[7] However, it is presumed that the Commission performed its duties in good faith, *Washington Park, Inc. Appeal,* 425 Pa. 349, 229 A. 2d 1 (1967), and the appellants' burden of proving fraud or abuse of discretion is a heavy one. *Pittsburgh School District Condemnation Case,* 430 Pa. 566, 575, 244 A. 2d 42, 46 (1968). Appellants rely on testimony by their expert witness, a real estate appraiser, that only 15% of the area certified in 1963 was in fact blighted and that in 1972 only 10% was blighted. This witness, appellants' only witness, admitted that he knew nothing about economics and was not an authority on traffic control. Both are among the statutory standards used to deter-

tion challenging the certification of blight was not subject to judicial review. This Court recognized that the Authority's power or right to condemn was being raised, thus making testimony on a preliminary objection proper under Section 406(a) of the Eminent Domain Code, *supra.*

[6] If no testimony is allowed, a condemnee has no opportunity to show that the action of the Authority was arbitrary. As in *Crawford v. Redevelopment Authority, supra,* where the court permitted testimony to be given by the condemnee to the effect that her property was not blighted, the court below considered similar testimony by appellants.

[7] As noted earlier, the 1963 certification was a consolidation of several smaller areas which had been previously and separately certified as blighted. Appellants' property was originally certified in 1952 and we find it significant that appellants have neither questioned that determination of blight nor regarded it as being arbitrary.

mine the existence of blight.[8] While the executive director of the Commission, testifying on behalf of the Authority, admitted that the certification "does not indicate that blight is pervasive throughout the area" and that "there were large areas . . . which were not blighted," he did testify that the Commission made its determination after eleven years of traffic studies, economic studies and studies of land value and use. At that time, center city Philadelphia was deemed a "logical planning unit."

Appellants would have us shift the burden to the Authority to justify the certification of center city Philadelphia as a logical planning unit where their assertion of minimal blight is based on the unsupported testimony of one witness unfamiliar with economics and without expertise in traffic control. This we decline to do. These appellants have been afforded the opportunity to prove arbitrariness in the Commission's certification and they have failed.

Even assuming the merit of appellants' other three contentions,[9] they are not properly raisable by preliminary objection. We have previously held that the scope of preliminary objections under Section 406(a) is to be limited. *Commonwealth Appeal,* 429 Pa. 254, 239 A. 2d 343 (1968). It is the clear intent of Section 406 to dispose of challenges to the validity of a condemnation as soon as possible after the taking as evidenced by the fact that preliminary objections must be filed

---

[8] The criteria for determining whether an area is blighted are set out in Section 1702(a) of the Urban Redevelopment Law, Act of May 24, 1945, P. L. 991, §1702(a), 35 P.S. §1702(a).

[9] Appellants' third preliminary objection is based upon the Authority's failure to offer the condemned land back to appellants' for redevelopment. In *Faranda,* we indicated that the condemnation need only satisfy the statutory requirements and there is nothing in the statute requiring the Authority to select a redeveloper from among the condemnees.

within thirty days after service of notice of condemnation. When the Authority filed the declaration of taking, it was in full compliance with terms of its authority and the condemnation was effective and valid as of that date. The Authority may take the land for an authorized purpose and subsequent legal or factual objections will not render that taking invalid. *Upper Dublin Township Authority v. Piszek*, 420 Pa. 536, 541, 218 A. 2d 328, 331 (1966). Accordingly, appellants cannot now raise by preliminary objection to the taking grievances that the Authority failed to comply with a provision of a City Council ordinance requiring the Authority to enter a Redevelopment Contract within one year thereafter, that the Authority had harassed them by demands for possession subsequent to the condemnation but prior to the one-year removal period set by City Council, and that the Authority erred in not offering the condemned land back to appellants for redevelopment.

Judgment affirmed.

Mr. Justice EAGEN and Mr. Justice MANDERINO concur in the result.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Appellants, whose property has been condemned, have been denied a fair opportunity to test in an appropriate forum—administrative or judicial—the Redevelopment Authority's 1952 declaration that the entire center-city area of Philadelphia is blighted. The Commonwealth Court affirmed dismissal of appellants' preliminary objections to the declaration of taking. *Simco Stores, Inc. v. Philadelphia Redevelopment Authority*, 8 Pa. Commonwealth Ct. 374, 302 A.2d 907 (1973). As Judge MENCER noted accurately in dissent, "The majority today affirms on the lower court's opinion, which disposed of appellants' preliminary objection that the

Center City Redevelopment Area of Philadelphia was not in fact blighted, even though it erroneously and in contradiction to Faranda [*Faranda Appeal,* 420 Pa. 295, 216 A.2d 769 (1966)], held that '[a]lthough it might be argued that the language in Faranda Appeal, supra, indicates differently, the overwhelming weight of authority in Pennsylvania limits the court's determination of the factual issue of blight to a review of the certification to that effect by the planning commission." 8 Pa. Commonwealth Ct. at 385-86, 302 A.2d at 914.

In my view, *Faranda* indicates the proper scope of judicial review in condemnation cases. There this Court through Mr. Justice, now Chief Justice JONES reversed dismissal of preliminary objections to a taking order. The property owner, like the property owners here, sought to show that the condemned area was not in fact blighted. We remanded for an evidentiary hearing on the issue of blight and noted "the taking is constitutional only if it is for a public use; if the purpose is not for a public use, the taking is unconstitutional. Herein, the Authority bottoms its public use in declaring the area involved to be blighted, a determination challenged by Faranda, thereby making the thrust of Faranda's attack directly to the Authority's power, not to its wisdom."[1] 420 Pa. at 301, 216 A.2d at 772.

Simco's challenge like Faranda's "seeks to show that the area is not blighted thereby negativing the *power or right* of the Authority to condemn." *Faranda Appeal,* id. at 300, 216 A.2d at 772 (emphasis in original). Contrary to the assertions of the majority, appellants do not ask the court to substitute its conception of blight for that of the Authority. What appel-

---

[1] See *McSorley v. Fitzgerald,* 359 Pa. 264, 59 A.2d 142 (1948); *Belovsky v. Redevelopment Auth.,* 357 Pa. 329, 54 A.2d 277 (1947); *Ormsby Land Co. v. Pittsburgh,* 276 Pa. 68, 119 A. 730 (1923).

lants seek is a judicial determination whether the Authority exceeded the power granted it by the Legislature.

The court in ruling on preliminary objections to a declaration of taking must make an initial determination that the area condemned is in fact blighted as defined by the Legislature.[2] This determination, fully within the competence of a judicial tribunal, decides the threshold question of the Authority's *"power or right"* to condemn. Id. Only if it is concluded that the Authority is acting within its legislatively-granted power, will a court confront the question whether the Authority's action was arbitrary or capricious. While a court's function is not to assess the wisdom of an administrative declaration of blight, a court must nevertheless fulfill its affirmative duty in condemnation cases to review the challenged exercise of the Authority's power.

Recognition of this division of functions between the Authority and the courts harmonizes the rationale of *Crawford v. Redevelopment Authority,* 418 Pa. 549, 211 A.2d 866 (1965), and *Washington Park, Inc. Appeal,* 425 Pa. 349, 229 A.2d 1 (1967),[3] with that of *Faranda.* In each of those cases, this Court declined to inquire into the wisdom of a taking. In neither did we hold that a court should not review the question of blight in order to assess the Authority's power to condemn.

In *Crawford,* appellant's expert witnesses conceded the presence of blighted areas immediately adjacent to the condemned parcel—an unnamed alley. We refused to "construe the actions of the Urban Renewal Board as arbitrary merely because one small part of the en-

---

[2] See Act of June 22, 1964, P.L. 84, Art. IV, § 406(a), as amended, 26 P.S. § 1-406(a) (Supp. 1973).

[3] See also *Pittsburgh School Dist. Condemnation Case,* 430 Pa. 566, 244 A.2d 42 (1968); *Golden Dawn Shops, Inc. v. Redevelopment Auth.,* 3 Pa. Commonwealth Ct. 314, 282 A.2d 395 (1971).

tire blighted area is free from blight." *Crawford v. Redevelopment Authority*, supra at 555, 211 A.2d at 869. It is clear that *Crawford* presented no question, as does the instant case, of the basis for a finding of blight in an entire planning area.

*Washington Park, Inc. Appeal* likewise did not address the issue of an Authority's power to condemn. There we held only that a taking does not lose its public character merely because some private interest is also benefited. Id. at 353, 229 A.2d at 3. "We, of course, agree[d] with appellant that the Commonwealth may condemn land only for a public purpose." Id.

The majority today plows new ground in declaring that a property owner may not on preliminary objections to a declaration of taking contest the existence of blight.[4] Nothing conceals the fact that there is no precedent for this unwarranted restriction of judicial review in condemnation cases. The majority here impermissibly limits the property owner to only a faint shadow of his right to judicial review.

This is indeed the first chance appellants have under the Eminent Domain Code[5] to challenge the Authority's declaration of blight. Section 406(a) of the Code,[6] as the majority concedes, prescribes preliminary objections to a notice of condemnation as the exclusive mode of disputing the blighted condition of property. Appellants' property was originally declared blighted in 1952. The majority "finds it significant that appellants have neither questioned that determination of blight nor regarded it as being arbitrary." This conclusion is startling since under section 406(a) preliminary objec-

---

[4] Is it now to be assumed that all the majority's pronouncements concerning declarations of blight will be equally applicable to other substantive questions of condemnation?

[5] Act of June 22, 1964, P.L. 84, Art. I-IX, §§ 101-903, as amended, 26 P.S. §§ 1-101 to 903 (Supp. 1973).

[6] Id. § 406(a), 26 P.S. § 1-406(a) (Supp. 1973).

tion to the notice of condemnation is the exclusive method of challenging a declaration of blight. Manifestly, appellants had no opportunity prior to the instant case to challenge the declaration of blight. The majority nevertheless precludes appellants from contesting the power of the Authority to take their property.

This misinterpretation of our cases significantly shifts the constitutional foundation of the entire Eminent Domain Code. If as the majority asserts a hollow right to file pro forma preliminary objections is all that the Code allows then that statute permits the taking of property without due process of law. *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S. Ct. 507 (1971); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S. Ct. 1820 (1969). Our cases do not attribute such an unconstitutional process to the Eminent Domain Code. I dissent from the majority's abandonment of the principles of those cases.

The Eminent Domain Code properly recognizes appellants' constitutional right to due process and therefore specifically mandates judicial review of the Authority's declaration of blight. In my judgment the order of the Commonwealth Court should be reversed. The case should be remanded to the hearing court to afford appellants the opportunity to present their claim that the Authority exceeded its power in declaring their property blighted.