In Re: Condemnation by the Commonwealth of Pennsylvania, Department of Transportation, of Right of Way, for Legislative Route 58018, Section 002, R/W in Delmar Township. Commonwealth of Pennsylvania, Department of Transportation, Appellant.

276

Argued June 8, 1977, before President Judge Bow-
man and Judges Crumish, Jr., Kramer, Wilkinson,
Jr., Mencer, Rogers and Blatt.

*James J. Kutz,* Assistant Attorney General, with
him *Robert W. Cunliffe,* Deputy Attorney General, and
*Robert P. Kane,* Attorney General, for appellants.

*Robert F. Cox, Sr.,* with him *Cox, Wilcox, Owlett
& Lewis,* for appellees.

Opinion by Judge Wilkinson, Jr., July 25, 1977:
The difficult issues presented in this appeal arise
from an order of the Tioga County Court of Common

Pleas sustaining preliminary objections to a declaration of taking filed by appellant. The subject of this appeal is a legislative route approximately 2.7 miles long, a narrow, unpaved by-pass located within a canyon of unusual scenic beauty and travelled primarily by those seeking to enjoy the natural, unspoiled surroundings. Appellant asserts that its plan to repair and replace several small, one-lane bridges along the route and relocate the stream channel over which the bridges run is necessary to remove existing hazards. The preliminary objections of the condemnees herein allege, *inter alia*, that appellant has not complied with Article I, §27 of the Pennsylvania Constitution and Section 2002 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §512. We must reverse the court below and dismiss the preliminary objections.

Appellant determined in 1971 that one of the bridges along the route was in need of structural repairs and proposed to construct a new bridge at the site and realign the approaches thereto. In so doing, appellant followed the procedures of Section 2002(b), 71 P.S. §512(b) which requires a determination of various social, esthetic, and environmental effects of "any transportation route or program requiring the acquisition of new or additional right-of-way." Before actual work was begun on the project, however, "Hurricane Agnes" struck in June 1972, causing substantial damage to the entire route and destroying 100 bridges in Tioga County and 300 bridges within appellant's regional district, an eight-county area which was included in both a proclamation of extreme emergency issued by the Governor of the Commonwealth and a declaration of a national disaster area issued by the President of the United States. The proclamation "urge[d] officials of flood-stricken political subdivisions of the Commonwealth to promptly act to meet the

current emergency . . . all without regard to time consuming procedures and formalities prescribed by law, mandatory constitutional provisions excepted."

The existence of hazards wrought by the flood prompted appellant to place the original project on a "deferred" status. A new plan was proposed under which appellant would repair one of the route's other one-lane bridges, replace another with a box culvert, realign, widen and resurface the approaches to such bridges and eliminate two other bridges through re-channelization of the stream. The proposal called for condemnation of 0.33 miles of right-of-way, removal of several trees and construction of temporary "run-around" roadways to accommodate heavy construction equipment. The proposal included several provisions for the protection of the environment, such as complete removal of the temporary roadway with seeding and mulching of the land so used, use of ponds and hay bales to prevent sedimentation from entering the stream during construction, installation of weathered "rustic" style guardrails esthetically compatible with the surroundings, and use of the same unpaved gravel surface as is presently found on the route. These provisions followed appellant's inquiries to environmental agencies of several states and the federal government as to standards for such roads.

Appellant met several times with concerned representatives from local groups and agreed to alter the original plans so as to preserve a stone wall and trees belonging to one of the condemnees. In addition, appellant's Secretary held a meeting in December 1972 to which a few such representatives were invited and after which the Secretary offered to relax appellant's safety standards and restore the route to its pre-flood condition of width and alignment if the local municipality would integrate the route into its system, an offer which the municipality later declined. However,

no formal record was kept of such meeting, nor was it advertised as a public meeting. In fact, no public hearing was ever scheduled, advertised or conducted concerning the proposed project. Appellant's Secretary did not publish in the *Pennsylvania Bulletin* that no adverse environmental impact would result from the project, no such environmental impact statement was ever prepared, and, in short, appellant did not adhere to the requirements of Section 2002(b).

The signature of the Governor was affixed to the plans in December 1973 and appellant filed its declaration of taking in May 1974. Condemnees then filed their preliminary objections pursuant to Section 406 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-406. A hearing was conducted before the Tioga County Court of Common Pleas on six dates in August, October and December 1974 at which extensive testimony was taken. In January 1976, appellant filed a motion to dismiss for lack of jurisdiction on which, following condemnees' answer thereto, oral argument was conducted. On July 20, 1976, the common pleas court denied appellant's motion to dismiss and sustained the preliminary objections. The court held that it had jurisdiction to adjudicate a challenge, through preliminary objections to a declaration of taking, to appellant's power to complete statutory requirements of the highway planning process; that in ordinary circumstances appellant's proposal would be subject to the procedural requirements of Section 2002(b); that the proclamation of extreme emergency issued by the Governor in June 1972 did not excuse appellant's non-compliance with Section 2002(b); and that the proposal would violate Article I, §27 of the Pennsylvania Constitution. This appeal followed.

Appellant first alleges error in the ruling of the court below that it had jurisdiction over the subject

matter. Appellant asserts that the challenges made
by the condemnees in their preliminary objections, al-
leging that appellant did not comply with the Proce-
dural requirements of Section 2002(b), are challenges
to matters within the planning aspect of roadway con-
struction, thus collateral to a condemnation proceeding
and justiciable only through proceedings in equity rath-
er than through preliminary objections under Section
406 of the Eminent Domain Code, 26 P.S. §1-406. The
court below rejected this argument, reasoning that ap-
pellant's alleged noncompliance with statutory proce-
dures would negate its power to condemn, and there-
fore preliminary objections asserting such noncom-
pliance actually constitutes a challenge to appellant's
"power or right" to condemn, a challenge for the rais-
ing of which preliminary objections under Section 406
are expressly the exclusive means. We must agree
with appellants. In *In Re: Condemnation by The Com-
monwealth of Pennsylvania, Department of Transpor-
tation, of Right of Way, for Legislative Route 201,* 22
Pa. Commonwealth Ct. 440, 349 A.2d 819 (1975), the
condemnees claimed that they had been deprived of
personal notice of a hearing under Section 2002(b)
during the design phase of a highway project and ar-
gued that preliminary objections under Section 406
constituted the proper means for asserting such a
claim. We refuted that argument. As stated by Presi-
dent Judge Bowman, speaking for a unanimous Court
en banc:

> Considering the first type of allowable pre-
> liminary objection, the power or right of the
> condemnor, the appellants are not actually chal-
> lenging the power or right of PennDOT to take
> their land. This is provided by statute, Act of
> May 29, 1945, P.L. 1108, *as amended*, 36 P.S.
> §2391.8. More accurately, they are challenging
> a collateral procedure to be followed as part of

highway planning. Likewise, the challenge is not to sufficiency of the security or the declaration of taking itself. Therefore, if appellants' argument is to fit into one of the allowable categories of preliminary objections, it must qualify as an objection to 'any other procedure followed by the condemnor.'

However, in Simco Stores, Inc. v. Philadelphia Redevelopment Authority, 8 Pa. Commonwealth Ct. 374, 379, 302 A. 2d 907, 910 (1973), aff'd., 455 Pa. 438, 317 A.2d 610 (1974), this Court stated:

"The term "any other procedure" refers to procedures such as are set forth in Sections 403 and 405, inclusive, and other procedures that may be directly related to the filing of the declaration of taking.'

*Id.* at 445, 349 A.2d at 821.

Condemnees here assert, however, supported by the court below, that *Condemnation Route 201* is distinguishable, and that *Faranda Appeal,* 420 Pa. 295, 216 A.2d 769 (1966) should be controlling instead. They observe in *Condemnation Route 201* an environmental impact statement was furnished and they claim, therefore, that such case was not one in which the condemnor failed to comply with statutorily required procedures. We cannot accept such a distinction. There, as here, the subject of the preliminary objections under Section 406 was indeed an alleged failure by the condemnor to follow procedures required by Section 2002(b). Condemnees also claim that *Condemnation Route 201* is distinguishable because in that case the condemnor did not violate Article I, §27 of the Pennsylvania Constitution but allegedly did so here. We dismiss that purported distinction for reasons discussed later in this opinion.

Moreover, we find *Faranda Appeal, supra,* inapplicable. There a condemnee appealed a dismissal of

preliminary objections to a condemnation by a city redevelopment authority. The condemnee argued that since the authority had failed to determine whether the area to be taken was in fact blighted, the requisite public use was not shown and therefore the very "power and right" of the redevelopment authority to condemn was placed in issue. Our Supreme Court upheld the use of preliminary objections in that case. Condemnees here argue that appellant failed to comply with the requirements of Section 2002(b) and Article I, §27 of the Pennsylvania Constitution and therefore this case is analogous to *Faranda Appeal, supra.* We disagree. Here there can be no question on the threshold issues faced in *Faranda Appeal*—that the proposed condemnation is for a public use and that appellant has the power to condemn for such public use. Especially in light of the mandate of our Supreme Court in *Simco Stores v. Redevelopment Authority,* 455 Pa. 438, 317 A.2d 610 (1974), such claims are properly raised only before this Court within our original jurisdiction in equity. Appellant's motion to dismiss for lack of jurisdiction should have been granted by the court below.

Because litigation on this matter has already been prolonged over several years, we will decide the case on the merits as if it had been properly brought within our equity jurisdiction. We thus address appellant's allegation that the court below erred in considering the proposed project a "transportation route or program" subject to the requirements of Section 2002(b). Again we must agree with appellant. In *Cowell v. Commonwealth,* 6 Pa. Commonwealth Ct. 574, 297 A.2d 529 (1972) we noted that appellant's Secretary is granted broad powers of condemnation in statutes other than Section 2002(b) and said:

> In view of this comprehensive grant of authority to the Secretary, we cannot hold that

the Legislature intended the term, 'transportation route or program,' to include *every* instance where the Secretary has the power to condemn. Such an interpretation would cause substantial delays in every highway project while doing little to further the purpose of the legislation. (Footnote omitted.) (Emphasis in original.) *Id.* at 577, 297 A.2d at 531.

Applying this rule, we held in *Cowell* that a condemnation to provide a shortened, straight channel with an increased gradient of one per cent, proposed to facilitate water flow from a newly-enlarged pipe and prevent flooding and erosion thereby was not a "transportation route or program." The record there indicated that the impact of the project in terms of the amount taken, the proposed use of the property, and the environmental, social and economic factors would be slight. Here, too, the project calls for relocation of a small stream channel, along with realignment of small one-lane bridges. The project is primarily repair work to alleviate hazardous conditions; it is not one of expansion or development. The total land area condemned is minimal and incidental to the repair work. The record here indicates that the environmental, social and economic impact of the project will be slight. Thus we are compelled to find, as we did in *Cowell,* that the project before us does not constitute a "transportation route or program." We cannot agree with the statement of the court below that there are "obvious" factual distinctions of such significance as to render *Cowell* distinguishable. While we have every respect for the concern of condemnees and other interested citizens, to find that the project here constitutes a "transportation route or program" would, under all the circumstances, be to ignore the admonition of *Cowell* by causing substantial delays without furthering the purpose of the legislation. *See*

*also, Bruhin v. Commonwealth,* 14 Pa. Commonwealth Ct. 300, 320 A.2d 907 (1974) and *Snelling v. Department of Transportation of Pennsylvania,* 27 Pa. Commonwealth Ct. 276, 366 A.2d 1298 (1976), in each of which we held that the project did not constitute a "transportation route or program."

Finally, we are confronted with the issue of whether appellant violated Article I, §27 of the Pennsylvania Constitution. The test for the determination of this issue was promulgated by this Court in an opinion by Judge MENCER in *Payne v. Kassab,* 11 Pa. Commonwealth Ct. 14, 29-30, 312 A.2d 86, 94 (1973):

The court's role must be to test the decision under review by a threefold standard: (1) Was there compliance with all applicable statutes and regulations relevant to the protection of the Commonwealth's public natural resources? (2) Does the record demonstrate a reasonable effort to reduce the environmental incursion to a minimum? (3) Does the environmental harm which will result from the challenged decision or action so clearly outweigh the benefits to be derived therefrom that to proceed further would be an abuse of discretion?

Application of each of these tests to the record before us reveals that appellant's proposal is constitutionally permissible. As to the first test, we have found that this project is not within the scope of Section 2002(b) and therefore we cannot require appellant to meet the numerous environmental considerations provided therein. We must conclude that appellant has complied with all applicable statutes and regulations. The record also amply demonstrates that appellant has made reasonable effort to reduce the environmental incursion to a minimum. The choice of gravel surfacing and "rustic" guardrails compatible with the area, the restoration of the area after construction, and the

anti-erosion provisions for sediment ponds and hay bales during construction and rock in the stream channel after construction all support our conclusion. Finally, we can find no abuse of discretion in permitting the plan to proceed further.

In reversing the court below and dismissing the preliminary objections to appellant's declaration of taking, we are not unmindful of the sincere concerns of the residents of the area to preserve its extraordinary scenic beauty. We most strongly urge appellant to continue its efforts to implement its plan with the utmost considerations for such concerns.

Accordingly, we will enter the following

ORDER

Now, July 25, 1977, the order of the Tioga County Court of Common Pleas in No. 395 Civil Division 1974, dated July 20, 1976, sustaining the preliminary objections of condemnees to a declaration of taking filed May 1, 1974, by appellant Commonwealth of Pennsylvania, Department of Transportation, and ordering title to all lands which were the subject of such declaration of taking to re-vest in said condemnees is hereby reversed and the preliminary objections are dismissed.