HARFORD TOWNSHIP

v.

Michael BANDURICK; Dorothy Bandur-ick; Henry L. Crispyn; Gracelyn Cris-pyn; William T. Gipp; Nancy R. Kirch; Kathleen McCreary; Christopher T. Tra-cy, Cathleen A. Tracy; and Nancy B. Wheeler, Appellants.

Commonwealth Court of Pennsylvania.

Argued April 4, 1995.
Decided June 6, 1995.

Frank D. Mroczka, for appellants.

Andrew Hailstone, for appellee.

Before PELLEGRINI and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

FRIEDMAN, Judge.

Michael Bandurick, Dorothy E. Bandurick, Henry L. Crispyn, Gracelyn Crispyn, William T. Gipp, Nancy R. Kirch, Kathleen McCreary, Christopher T. Tracy, Cathleen A. Tracy, and Nancy B. Wheeler (Condemnees) appeal from an order of the Court of Common Pleas of Susquehanna County (trial court) overruling and dismissing certain of Condemnees' preliminary objections to Harford Township's (Township) Declaration of Taking which condemned sewer easements across properties owned by Condemnees in the Tingley Lake area of the Township. We affirm.

The Township, a mostly rural area of 32 square miles with a population of approximately 1100 concentrated in the Village of Harford, Kingsley and the Tingley Lake area, is a Township of the second class.[1] The

---

1. For the most part, the Tingley Lake residences are seasonally occupied. (R.R. at 49a.) Two

Township has no central sewage collection facility, so that properties in the Township must be served by on-lot sewage disposal systems.

Pursuant to the Pennsylvania Sewage Facilities Act, Act of January 24, 1966, P.L. (1965) 1535, *as amended*, 35 P.S. §§ 750.1–750.20, and a Department of Environmental Resources (DER) requirement, the Township hired an engineering consultant to perform a "Sewage Needs Survey" to determine which areas of the Township had failed or malfunctioning on-lot systems. The survey divided the Township into five service areas and, based upon a visual inspection, identified obvious failed or malfunctioning on-lot systems in each service area. In addition, a number of other properties were identified as having "suspected malfunctions" based upon characteristics such as lot size, age of houses, soil type, slope, and lack of any apparent on-lot sewage disposal system. The consultants did not perform dye or bacteria tests. (R.R. at 41a.) Although the properties at Tingley Lake had no obvious malfunctions, due to the type of soils, the slope of the land and the lot sizes there, several of these properties were identified as having "suspected malfunctions". After concluding the survey and analysis, the consultants recommended that the Township build a central sewage collection and treatment facility to remedy poor sewage disposal methods. The consultants also evaluated alternative plans which would serve varying portions of the Township.

Pursuant to the Pennsylvania Sewage Facilities Act, the Township submitted one of the alternative plans to DER. DER rejected that first alternative plan, which included only the area known as the Village of Harford. (R.R. at 107a.) The Township then submitted an amended plan, which covered the Village of Harford area and also included the Tingley Lake area. This second plan was approved by DER. (R.R. at 110a–12a.) Subsequently, the Township held public meetings to discuss the approved plan as well as funding options. (R.R. at 150a–51a.) Because the Township was unable to reach agreement with the Condemnees to purchase all easements necessary for the project, the Township filed a Declaration of Taking condemning sewer easements across Condemnees' properties.

Pursuant to section 406 of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–406, Condemnees filed preliminary objections challenging the criteria used to develop the Township's sewer plan as well as the need to extend sewers to Tingley Lake. Section 406 of the Code, 26 P.S. § 1–406, provides that a condemnee may file preliminary objections to the declaration of taking and that those objections

shall be limited to and shall be the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property unless the same has been previously adjudicated; (2) the sufficiency of the security; (3) any other procedure followed by the condemnor; or (4) the declaration of taking. Failure to raise these matters by preliminary objections shall constitute a waiver thereof.

Recognizing the limitations on preliminary objections to a declaration of taking, the trial court dismissed paragraphs 10–43 of Condemnees' preliminary objections on the basis that because Condemnees' preliminary objections do not fall within the scope of section 406 of the Code, they are not proper preliminary objections to a declaration of taking.[2]

Condemnees appeal from the trial court's dismissal of these preliminary objections,[3] arguing that their preliminary objections *were*

---

truck stops, near I–81, are also located in the township. (R.R. at 42a.)

**2.** The trial court also sustained some of Condemnees' preliminary objections, giving the Township 10 days to amend the Declaration of Taking. That portion of the decision is not at issue here.

**3.** Our scope of review of a trial court's decision in an eminent domain matter is limited to a determination of whether the trial court abused its discretion, an error of law was committed, or whether the findings and conclusions are supported by sufficient evidence. *In re: Appeal of Waite*, 163 Pa.Commonwealth Ct. 283, 641 A.2d 25, *appeal denied*, 539 Pa. 657, 651 A.2d 543 (1994). The trial court is limited in its review of a decision to condemn property to determining whether the condemnor is guilty of fraud, bad faith or has committed an abuse of discretion. *Id.* The condemnee bears the burden of proving

within the scope of 26 P.S. § 1–406(a) because by attacking the criteria utilized by the Township to develop its sewer plan, the Condemnees attack the Township's power or right to appropriate Condemnees' property. The Township responds that Condemnees do *not* challenge the Township's power or right to condemn the sewer easements across Condemnees' properties but, rather, Condemnees improperly attack the merits of the Township's plan and the analysis upon which it is based.[4] We agree.

■ Eminent domain, which is the inherent power of government to appropriate private property for public use,[5] is, essentially, a means to an end. *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954). Use of eminent domain is appropriate if the goals sought to be achieved are legitimate and the means chosen are reasonably necessary to achieve those goals.[6]

■ Here, Condemnees assert that no public purpose exists for the condemnation of the easements across their properties, arguing that the consultant used a defective analysis to determine "suspected malfunctions" in

the Tingley Lake area. Thus, Condemnees conclude that no malfunctioning on-lot systems exist at Tingley Lake and that there is no need to extend the sewer lines to Tingley Lake or to condemn easements across their properties. However, Condemnees' argument assumes that the existence of malfunctioning systems at Tingley Lake is the only justification for including Tingley Lake in the sewer plan. To the contrary, the purpose of the condemnation here is much broader: "to construct, maintain, operate and control a sewage treatment facility and sewer collection lines to serve some of the residents of Harford Township, Susquehanna County, Pennsylvania." (R.R. at 3a.) Pursuant to the Second Class Township Code's grant of authority to "establish and construct a system of sewers and drainage," the stated purpose for the condemnation is a proper public purpose. Section 1501 of the Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. § 66501.

■ Nevertheless, Condemnees argue that a challenge to the merits of the sewer plan is a proper preliminary objection to a declaration of taking because it acts as a challenge

that the condemnor abused its discretion, and the condemnee's burden of proving fraud or abuse of discretion is a heavy one. There is a strong presumption that the condemnor acted properly. *Id.*

4. Because of our determination on this issue, we do not reach the Township's second contention that, even if the challenge to the merits of the plan might otherwise be considered a challenge to the "power and right" of the Township to condemn, Condemnees waived their right to challenge the merits of the sewer project because they failed to exhaust administrative remedies by appealing DER's plan to the Environmental Hearing Board, as provided under the Pennsylvania Sewage Facilities Act.

5. "The power of eminent domain, next to that of conscription of man power for war, is the most awesome grant of power under the law of the land." *Winger v. Aires*, 371 Pa. 242, 244, 89 A.2d 521, 522 (1952). Our Supreme Court has more fully described the power of eminent domain as:

a reservation in the grant of land by the state to a private owner, not necessarily expressed, but always implied, and is paramount to the right of ownership in the individual. It has been authoritatively stated that this power is not created either by constitution or statute,

but is an inherent attribute of sovereignty itself.
*Jacobs v. Clearview Water Supply Co.*, 220 Pa. 388, 392–93, 69 A. 870, 871 (1908). This power is limited by both federal and state constitutions. U.S. CONST. amend. XIV, § 1; PA. CONST. art. 1, § 10 (amended 1973) and art. 10, § 4 (1966).

6. *See* an excellent discussion of the relationship between the police power and the power of eminent domain in *Berman v. Parker*, wherein Justice Douglas, speaking for the Court, said:

We deal, in other words, with what traditionally has been known as the police power. . . . Subject to specific constitutional limitations, when the legislature has spoken, the public interest has been declared in terms well-nigh conclusive. In such cases the legislature, not the judiciary, is the main guardian of the public needs to be served. . . . This principle admits of no exception merely because the power of eminent domain is involved. The role of the judiciary in determining whether that power is being exercised for a public purpose is an extremely narrow one.
. . . .
Once the object is within the authority of [the legislature], the right to realize it through the exercise of eminent domain is clear. For the power of eminent domain is merely the means to the end.

to the power or right of the Township to condemn. In support of their position, Condemnees rely on *Faranda Appeal,* 420 Pa. 295, 216 A.2d 769 (1966), *Simco Stores v. Redevelopment Authority,* 455 Pa. 438, 317 A.2d 610 (1974), and *In Re: Condemnation of Premises 130 Court St. in City of Reading, Berks County,* 36 Pa.Commonwealth Ct. 394, 388 A.2d 1108 (1978) for the proposition that the criteria used to decide to condemn property can be challenged in preliminary objections to a declaration of taking. However, Condemnees' reliance on these cases is misplaced.

In each of the cases cited, the condemnor was a redevelopment authority, acting pursuant to the Urban Redevelopment Law, Act of May 24, 1945, P.L. 991, 35 P.S. §§ 1701–1719.1. The Urban Redevelopment Law grants redevelopment authorities the power of eminent domain "for the public purposes of the elimination of blighted areas through economically and socially sound redevelopment of such areas."[7] Section 2 of the Urban Redevelopment Law, 35 P.S. § 1702. Thus, if there were no blight to eliminate, a redevelopment authority would have no "power or right" to condemn.

▮ That is not the case here where existence of malfunctioning on-lot systems is neither the stated reason for the condemnation nor necessary to justify condemnation of the sewer easements across Condemnees' land. The Township's purpose for the condemnation as stated in the Declaration of Taking is consistent with the Second Class Township Code's authorization to construct sewers. Here, rather than challenging the Township's power or right to condemn easements for the purpose of constructing and operating a sewage treatment facility and sewer collection lines in the Township, Condemnees' preliminary objections actually attack the *merits* of the underlying sewer plan.[8]

*Id.* at 32–33, 75 S.Ct. at 102–03.

**7.** A certification of blight justifies condemnation by a redevelopment authority. Even so, each property condemned as part of a redevelopment plan need not be blighted. It is sufficient that the area in which the property is located is blighted and designated for redevelopment. *In re City of Harrisburg,* 30 Pa.Commonwealth Ct. 273, 373 A.2d 774 (1977); *see also Berman v. Parker.*

Accordingly, Condemnees' preliminary objections in paragraphs 10–43 were not within the scope of section 406 of the Code, 26 P.S. § 1–406, and we affirm the trial court's dismissal of those preliminary objections.

### ORDER

AND NOW, this 6th day of June, 1995, the order of the Court of Common Pleas of Susquehanna County, dated July 11, 1994, is affirmed.

**8.** The survey analysis which described several Tingley Lake properties as having "suspected malfunctions" may have misled the Condemnees into thinking that actual malfunctions were essential to exercise of the Township's power to condemn for the project. However, under the grant of power to second class townships, malfunctions or suspected malfunctions are not necessary and, pursuant to its police powers, the Township has authority to construct a sewage facility as it deems necessary and appropriate.