In the Matter of the Proceeding by the TOWNSHIP OF EAST HANOVER for the Condemnation of Certain Property of Chesapeake Estates Partnership.

Chesapeake Estates Partnership, Appellant.

Appeal of CHESAPEAKE ESTATES PARTNERSHIP, Appellant.

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 1997.
Decided Oct. 10, 1997.

Mark S. Silver, Harrisburg, for appellant.

Richard H. Wix, Harrisburg, for appellee.

Before SMITH and FRIEDMAN, JJ., and MIRARCHI, Jr., Senior Judge.

FRIEDMAN, Judge.

Chesapeake Estates Partnership (Chesapeake) appeals from an order of the Court of Common Pleas of Dauphin County that dismissed Chesapeake's Preliminary Objections to East Hanover Township's (Township) Declaration of Taking condemning certain property owned by Chesapeake. We affirm.

On February 26, 1997, the Township filed a Declaration of Taking condemning a portion of property owned by Chesapeake[1] located in East Hanover Township, Dauphin County, Pennsylvania. (R.R. at 5a.) The Township stated that a temporary construction easement and a permanent right-of-way were being taken for the purpose of constructing and maintaining a public sanitary sewer system. (R.R. at 6a.) The Township offered Chesapeake $1,973.00 as just compensation for the easement and right-of-way. (R.R. at 6a.) The condemnation was authorized by a Resolution of the Board of Supervisors of the Township duly adopted on February 18, 1997.[2] (R.R. at 5a.) The Township filed and

---

**1.** Chesapeake operates the Chesapeake Estates of Grantville Mobile Home Park on this property, which contains a private sanitary sewage treatment facility approved by the Pennsylvania Department of Environmental Protection (DEP). (R.R. at 156a–57a.) The sewage treatment plant within Chesapeake's property has an operating permit from DEP for a treatment capacity of 80,000 gallons per day. (R.R. at 156a.)

The subject property is located in the northeast quadrant of the Grantville interchange along Interstate 81. The tract, measuring approximately 183.944 acres, (R.R. at 27a), is comprised of 347 improved lots for manufactured housing, each having a parking area, with patio or walkway. (R.R. at 28a.) The entire mobile home park is improved with utilities, including private water and private sewer, inclusive of sewer laterals,

collector lines, interceptor lines and transmission lines leading to a private sanitary sewage treatment plant, electric, cable television, and telephone. Other sites include a school bus stop with protective shed, playground with equipment, covered and partially enclosed cluster mailbox area with bulletin board, water tower, seven blacktop streets with traffic control signs and speed bumps, street lights, maintenance/office building, equipment storage barn, and an area leased to Chesapeake Mobile Home Sales for a sales office and display area. (R.R. at 28a, 156a.)

**2.** Previously, on November 12, 1993, the Township had filed a Declaration of Taking in the Court of Common Pleas of Dauphin County, purporting to acquire virtually the same area sought

served a Notice of the Filing of the Declaration of Taking upon Chesapeake on February 26, 1997. (R.R. at 12a.)

Chesapeake filed timely Preliminary Objections to the Township's February 26, 1997 Declaration of Taking,[3] challenging the condemnation on the basis that, inter alia, the Township did not have the power or right to condemn Chesapeake's property; and that the condemnation was arbitrary, capricious, unreasonable and in bad faith because Chesapeake's property did not need to be included within the proposed public sanitary sewer system. (R.R. at 27a.)

A hearing was held on April 25, 1997. Clarence W. Martin, a partner in Chesapeake, testified at the hearing on behalf of Chesapeake. Carl Poffenberger, head of the Municipal and Environmental Division of Erdman Anthony Associates, the engineering firm handling the development of the Township's sewer system, testified on behalf of the Township. Both Martin and Poffenberger testified that the Township was required, by direction of the Pennsylvania Department of Environmental Protection (DEP), to include

Chesapeake in the service area of the Township's public sanitary sewage system (the Act 537 Plan), despite the fact that Chesapeake had its own private facility. (R.R. at 163a, 173a, 181a.) DEP had approved the Act 537 Plan conditioned upon inclusion of Chesapeake's property. (R.R. at 164a.)

According to Martin, Chesapeake has operated its private sanitary sewer system on a continual basis since 1987 when it was initially issued an operating permit by the Department of Environmental Resources (DER) (now DEP).[4] (R.R. at 157a.) On February 26, 1992, DEP issued a renewal permit to Chesapeake; however, the renewal contained the condition that once a public sewer system was available, the permit would no longer be valid and Chesapeake would have to hook on to the public sewage system. (R.R. at 174a.) Martin further testified that the new permit which Chesapeake had recently applied to DEP for would also contain the condition requiring Chesapeake to hook on to the Township's sewer system upon its construction.[5] (R.R. at 174a.)

by the instant February 27, 1997 Declaration of Taking and for the same purported purpose, i.e., to construct and maintain a public sanitary sewer system. (R.R. at 159a.) Chesapeake responded by filing Preliminary Objections. (R.R. at 160a.) A meeting between the parties followed, in which Chesapeake indicated that it wished not to be included within the Township's proposed sanitary sewer project due to its existing private facility. (R.R. at 161a.) The Township agreed, and ultimately filed a Declaration of Relinquishment. (R.R. at 214a.) Chesapeake repeatedly refers to the November 12, 1993 Declaration of Taking; however, we note that the November 12, 1993 Declaration of Taking has no applicability to the Declaration of Taking at issue.

3. Section 1–406(a) of the Eminent Domain Code, 26 P.S. § 1–406(a), provides that a condemnee may file preliminary objections to the declaration of taking and that those objections:

shall be limited to and shall be the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property unless the same has been previously adjudicated; (2) the sufficiency of the security; (3) any other procedure followed by the condemnor; or (4) the declaration of taking.

Section 1–406(a) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–406(a).

4. According to the record, DER originally issued the National Pollutant Discharge Elimination

System (NPDES) permit to Chesapeake in August 1986. (R.R. at 79a.)

5. At the hearing, two documents were identified regarding Chesapeake's permit: 1) a July 1, 1994 letter from DEP to Martin (R.R. at 211a); and 2) an April 14, 1997 letter from DEP to Martin with a draft of Chesapeake's current NPDES permit attached. (R.R. at 193a.)

The July 1, 1994 letter from DEP to Martin advised Chesapeake that "your NPDES Discharge Permit will terminate and become null and void with the implementation of the East Hanover Township project. This was described as Condition 6 in the February 26, 1992, renewal of your NPDES permit. It is further provided for under Standard Condition No. 15 of your Water Quality Management Permit." (R.R. at 211a.)

Part C of the draft of Chesapeake's current permit provides:

This permit authorizes the treated sewage discharge until such time as the East Hanover municipal sewerage facilities are capable of receiving and treating the permittee's sewage. At that time, the permittee shall provide for the conveyance of the sewage to these sewerage facilities, abandon the use of the private facilities, and notify the Department accordingly. This permit shall then, upon notice from the Department, terminate and become null and void, and shall be relinquished to the Department.

Martin provided further testimony that Chesapeake would not contest the Township's right to build a sewer system or to obtain the right-of-way going across Chesapeake's property if Chesapeake does not have to hook on to the system. (R.R. at 176a–77a.) Rather, Chesapeake's principal reason for contesting the Township's condemnation of its property is the costs Chesapeake will incur in hooking onto the Township's sewer system, including losing the value of its present sanitary sewage system at the mobile home park. (R.R. at 178a.)

Poffenberger testified that it was necessary to condemn Chesapeake's property to get the point of connection to Chesapeake's existing sewer treatment system and to facilitate the addition of properties adjacent to the mobile home park, including a gas station, small park, and Penn National Race Track.[6] (R.R. at 181a, 187a.)

■ Following the hearing, the trial court concluded that Chesapeake failed to sustain its burden of proving that the proposed condemnation was not within the power or right of the Township or suffered from some other deficiency as enumerated in Section 1–406(a)

(R.R. at 210a.)

6. The gas station and park that Mr. Poffenberger referred to are properties which DER required Chesapeake to include within its private system as a condition for the issuance of Chesapeake's initial operating permit. (R.R. at 187a, 218a–20a.)

Penn National Race Track is located immediately north of Chesapeake's property in the Township. (R.R. at 155a.) Poffenberger stated that there have been discussions with Penn National Race Track about its inclusion within the Township's sewer system, and the condemnation would serve for future extension of the line (R.R. at 181a–82a), but he said no definite time has been set for this inclusion. (R.R. at 186a.)

7. Our scope of review of a trial court's decision in an eminent domain matter is limited to a determination of whether the trial court abused its discretion, an error of law was committed, or whether the findings and conclusions are supported by sufficient evidence. *Harford Township v. Bandurick*, 660 A.2d 189 (Pa.Cmwlth.1995).

8. The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101–68701.

The Township is a second class township, and thus is subject to the powers and limitations of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–406(a), and issued an order dismissing the Preliminary Objections. Chesapeake appeals from the trial court's dismissal of the Preliminary Objections.[7]

■ The threshold issue of this case is whether the Township possessed the authority to condemn the Chesapeake property for the purpose of constructing and maintaining a public sanitary sewer system; for without that authority, no condemnation can take place. *In re Condemnation by the Township of Heidelberg for Footpath, Alleyway and Bridge Purposes,* 58 Pa.Cmwlth. 321, 428 A.2d 282 (1981). We conclude that, pursuant to the grant of eminent domain power to second class townships under section 2501 of the Second Class Township Code,[8] the Township possessed the authority to condemn Chesapeake's property for the purpose of constructing and maintaining a public sanitary sewer system. In connection with such condemnation, the Township properly offered Chesapeake the sum of $1,973.00 as just compensation.[9]

the Second Class Township Code. Section 2501 of the Second Class Township Code states:

The board of supervisors may establish and construct sanitary sewer systems which shall if possible be constructed along and within the lines of the rights-of-way of public roads. If the board of supervisors determines that the systems shall be located on or through private property, the board of supervisors may acquire the land by gift, purchase or *eminent domain.* 53 P.S. § 67501 (emphasis added). Pursuant to this provision, a board of supervisors is specifically authorized to acquire private property by eminent domain to construct a sanitary sewer system. *Id.*

9. The Fifth Amendment to the United States Constitution, which has been incorporated to the states through the Due Process Clause of the Fourteenth Amendment, requires that private property shall not be taken by the government without just compensation. U.S. Const. amend. V. The Pennsylvania Constitution similarly provides that private property shall not "be taken or applied to public use, without authority of law and without just compensation being first made or secured." PA Const. art. I, § 10. Here, the Township, pursuant to its taking power, properly offered Chesapeake just compensation.

■ The next issue raises the question of whether, because the Township possessed the power to condemn, its condemnation here was arbitrary, capricious or an abuse of discretion. Courts cannot interfere with the exercise of the power of eminent domain by an entity possessing such power, in the absence of proof of fraud, collusion, bad faith or arbitrary action equating an abuse of discretion. *In re Heidelberg,* 428 A.2d at 286, citing *Weber v. Philadelphia,* 437 Pa. 179, 262 A.2d 297 (1970). Because there is a strong presumption that the municipality has acted properly, the burden is heavy upon one attempting to show bad faith or an abuse of discretion. *Id.*

Chesapeake argues that the trial court failed to acknowledge the restrictions of the Eminent Domain Code, asserting that no public purpose exists for the condemnation of its property for a sewage system. Chesapeake asserts that, because Chesapeake has its own private facility which can continue to serve the mobile home park, in addition to the gas station and other adjacent facilities that the Township intends to include in its system, the taking by the Township is arbitrary, capricious and an abuse of discretion. We conclude that the trial court properly determined that the condemnation was not arbitrary, capricious or an abuse of discretion.

■ This court has held that the establishment and construction of a system of sewers and drainage under the Second Class Township Code is a proper public purpose for condemning private property. *Harford Township v. Bandurick,* 660 A.2d 189 (Pa. Cmwlth.1995).[10] Under the grant of power to second class townships, and pursuant to its police powers, the Township has authority to construct a sewage facility as it deems necessary and appropriate. *Id.*

■ Finally, Chesapeake contends that section 2502(d) of the Second Class Township Code prevents the Township from including Chesapeake within its public sewer system.[11] This argument also must fail. The section 2502(d) exemption applies only when an entity is operating a private sewage treatment plant under *mandate* of a state agency, and lasts as long as the private plant continues to meet the specifications and standards mandated by that agency. Here, there is no dispute between the parties that once the Township's public sanitary sewer system is built, Chesapeake's operating permit becomes void and must be relinquished to DEP. At that point, Chesapeake's private sewer system will no longer be mandated by DEP. Without such mandate, the Township may require Chesapeake's inclusion within the public sewer system.[12] Accordingly, we affirm the trial court's dismissal of Chesapeake's Preliminary Objections.

10. In *Harford Township,* this court concluded that, pursuant to the Second Class Township Code's grant of authority to "establish and construct a system of sewers and drainage," the condemnation of private land "to construct, maintain, operate and control a sewage treatment facility and sewer collection lines to serve some of the residents of Harford Township, Susquehanna County, Pennsylvania" was a proper public purpose. *Harford Township,* 660 A.2d at 191. Thus, this court held that the extension of sewer lines to an area within Harford Township, despite the absence of malfunctioning on-lot sewage systems there, was justified since the condemnees' preliminary objections attacked the merits of the sewer plan rather than Harford Township's power or right to condemn easements in order to establish a public sanitary sewer system. *Id.*

11. Section 2502(d) of the Second Class Township Code provides:

The board of supervisors shall not require any commercial or industrial business to connect to the township sanitary sewer system when the commercial or industrial business is operating a private sanitary sewage treatment plant under *mandate* of any agency of the Federal or State Government. This exemption shall last as long as the private sanitary sewage treatment plant continues to meet the specifications and standards mandated by the Federal or State agency and for forty-five days after that. Section 2502(d) of the Second Class Township Code, 53 P.S. § 67502(d) (emphasis added).

12. Chesapeake argues that its mobile home park is a "commercial business" within the meaning of section 2502(d) of the Second Class Township Code, 53 P.S. § 67502(d). We note, however, that because Chesapeake's argument fails under the "mandate" provision of section 2502(d), we need not decide whether the mobile home park is a commercial business.

## ORDER

AND NOW, this 10th day of October, 1997, the order of the Court of Common Pleas of Dauphin County, dated May 20, 1997, is affirmed.

SMITH, J., concurs in the result only.